Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of SAVILLIA SMITH, Dependent Mother, Respondent, for Compensation under the Workmen's Compensation Law, for the Death of Her Son, MERLIN SMITH, v. H. J. BARTLE MANUFACTURING CORPORATION, Employer, and STANDARD ACCIDENT INSURANCE COMPANY OF DETROIT, MICHIGAN, Insurance Carrier, Appellants.

Third Department, November 21, 1919.

**Workmen's Compensation Law — death of boy caused by elevator in adjoining building — acquiescence of employer to use of elevator — award affirmed.**

Claim for compensation under the statute for the death of a boy sixteen years of age who was employed as bundle boy in a factory and was killed by an elevator in an adjoining building owned by the same lessor.  There was evidence that the fire doors between the buildings were left open and were used habitually by said boy and his fellow-employees as was also the elevator on which at the time of the accident was one of the employer's trucks.  On all the evidence, *held*, that there was a *quasi*

acquiescence on the part of the employer to the use of the elevator, and that a finding by the Commission that the claimant was entitled to an award should be affirmed.

The fact that the decedent may have been somewhat at fault does not deprive the claimant of the right to compensation.

The presumption is that the case comes within the Workmen's Compensation Law.

WOODWARD and COCHRANE, JJ., dissented, with opinion.

APPEAL by the defendants, H. J. Bartle Manufacturing Corporation and another, from a decision and award of the State Industrial Commission, entered in the office of said Commission on or about the 25th day of February, 1919.

*Neile F. Towner,* for the appellants.

*Charles D. Newton,* Attorney-General [*E. C. Aiken, Deputy Attorney-General,* of counsel], and *Bernard L. Shientag,* counsel for State Industrial Commission, for the respondent State Industrial Commission.

*John F. Murray* and *William H. Murray,* for the claimant, respondent.

LYON, J.:

The State Industrial Commission has found that Merlin Smith was sixteen years of age in December, 1917. He had never before worked out. He was a bundle boy in the employ of the H. J. Bartle Manufacturing Corporation, which was engaged in the manufacture of shelter tents for the United States government in the late war. They occupied the second, third and fourth floors of the building having an entrance on Federal street in the city of Troy, N. Y. It adjoined a building with an entrance on River street. The two buildings were under one ownership and constituted the Tibbitts Block. Each had an elevator. These buildings were separated by brick walls. Through these walls were cut fire doors, which afforded easy access from one building to the other. One witness testified that a notice was posted on the wall near the fire door, saying: " No admittance to this building." Another witness testified that the notice merely said, " Fire Door." The Bartle Corporation employed some 600 hands. Thirty of these were boys. George Tashjian rented an apartment in the River street building. He worked for the Bartle

Third Department, November, 1919.    [Vol. 189.

Corporation.   He was accustomed to go up in the elevator in the River street building, passing through the fire doors fifteen or eighteen times daily.   He would get work from the Bartle Corporation, would take it to his apartment and when finished would take it back.   He testified that he often found the iron doors open and the swinging gates up.   The elevator was contiguous to the fire doors.   One of the witnesses testified that she told the boys not to go through into the hallway, that they had no business there.   The Smith boy, however, was not included in this warning.   Another witness testified that the boys were accustomed to eating their luncheon in the hallway.   It also appears that the boys were in the habit of playing with the elevator during the noon hour, and were forbidden to do so by one of the foreladies.   It appears that the Bartle Corporation used the River street elevator to take up raw tent goods, which were unloaded from wagons.   There is evidence that these fire doors were open much of the time. The Commission has found that the occupants of the Bartle Building used the elevator in the River street building with impunity   One of the witnesses testified that she ordered the Smith boy off the elevator the day before he was killed. At about five o'clock on the afternoon of December 12, 1917, the Smith boy was found wedged between the elevator on the fifth floor, and was so badly injured that he died within a short time.   A three-wheeled truck of the Bartle Corporation, used to carry tent materials, was found on the elevator beside him.   The forelady stated to the president of the Bartle Corporation that she had sent him on an errand to the fifth floor shortly before he was killed.   Another employee testified that the last she saw the Smith boy the day he was killed was on the second floor going upstairs, on the corporation stairway, to the third floor with tent material.   This was where the work first started.   Tashjian testified that he used this elevator a half hour before the accident and that there was no truck on it then.   Fellow-employees, including Smith, used the elevator on the day before the accident unloading goods from it without objection.   The elevator was unattended at all times.   A forelady testified that if the boy used the River street elevator he used it contrary to their wishes. Powell, the superintendent of the Bartle Corporation, testified

that several instances occurred where it was reported to him that the boys were in the habit of getting on the elevator. He seems to have made no order forbidding it. He did not consider it a violation of orders or meriting a rebuke, much less a discharge. The Commission found a *quasi* acquiescence on the part of the employer in using the elevator. The facts and circumstances presented a question of fact for the Commission. It cannot be said that there is no evidence to support their finding. Upon the evidence it can be inferred that the deceased was engaged in work for the Bartle Corporation at the time he met with the accident. The fact that a boy sixteen years of age, who had never worked out before, may have been somewhat at fault, if indeed he was at all at fault, does not deprive the claimant of the right of compensation. (Workmen's Compensation Law, § 10; *New York Central Railroad Co.* v. *White*, 243 U. S. 188.) The presumption is that the case comes within the Workmen's Compensation Law. (§ 21.)

The award should be affirmed.

All concurred, except WOODWARD, J., dissenting with an opinion in which COCHRANE, J., concurred.

WOODWARD, J. (dissenting):

The State Industrial Commission has found as conclusions of fact that on December 12, 1917, one Merlin Smith received injuries which resulted in his death; that he was employed by the H. J. Bartle Manufacturing Corporation, at Troy, N. Y., which company was engaged in manufacturing tents for the United States government, and that the said Smith was employed as a bundle boy; that on the day in question he " was working for his employer at Troy," and that " while engaged in the regular course of his employment and while apparently using an elevator, he was crushed by said elevator, and thereby sustained injuries consisting of a rupture of a kidney and of the spleen, which injuries resulted in his death within an hour." It further adds, " the facts set forth in the opinion of Commissioner Lyon are adopted with the same force and effect as if herein set forth in full," and makes an award from which the employer and the insurance carrier appeal.

The undisputed evidence in this case is that Merlin Smith, a boy sixteen years of age, was employed as a bundle boy. His duties were to take material to and from the tables where it was in process of manufacture in the production of shelter tents, and at intervals to carry materials from one floor to the other of the building in which the manufacturing was carried on. Whenever the parcels to be carried from one floor to another were too heavy to be carried up the stairways they were loaded into small trucks and these were placed in the elevator and carried to the desired floor. The company kept a man for the operation of this elevator in its own plant, and the accident in question did not occur in connection with this elevator.

The building occupied by the Bartle Manufacturing Corporation was constructed in close proximity to a second building, both owned by the same person, but leased out to the Bartle Corporation and others for business purposes. They were separate buildings, with different floor levels, and up to two or three years ago there was no intercommunication between them. The public authorities, however, demanded the construction of a fire wall between these buildings, and when the wall was built it was provided with doorways, designed to afford opportunity to escape from either of the buildings in the event of fire to the other, and then by closing the doors to aid in the control of the fire. In other words, the police power of the State operated to produce a communication between these buildings, not for any of the purposes of the tenants, but for the safety and well-being of the employees and the public. The building occupied by the Bartle Corporation was known as the Federal street building, having an entrance on Federal street, while the remaining building was known as the River street building, having an entrance on River street. In this latter building there was an elevator, operated by any one who happened to desire its use by merely pulling a rope in one direction or the other, and it was upon this elevator, in a building neither occupied nor controlled by the Bartle Corporation, that the accident occurred. In the River street building a man by the name of George Tashjian carried on an independent contract for the Bartle Corporation. He made the button holes in the tent materials, coming to the

factory for the materials and returning them when the work was done, and this man appears to have made use of the doorway between his quarters in the River street building and the Federal street building, and there was evidence that on a few occasions, remote from the accident, when the elevator in the Federal street building was out of order, the Bartle Corporation had asked and received permission to use the elevator in the River street building, but aside from these cases there was no business communication between the two buildings, and the uncontradicted evidence is that the Bartle Corporation had not only posted notices that its employees were not to make use of these doorways in the fire wall but that they were verbally told practically every day not to trespass upon the adjoining premises, and particularly not to make use of the elevator, some of the boys having been discharged for playing with the elevator in the River street building during the noon hour.

There is no evidence that Merlin Smith was in any manner, directly or indirectly, authorized or directed to be in the River street building at any time during his employment, nor that any one connected with the Bartle Corporation ever acquiesced in or gave any encouragement to trespassing upon the River street premises, and there is not the slightest evidence that it was necessary or proper for him to be upon such premises for any of the purposes of his employment. He might, so far as this record shows, have been upon the steamboats plying the Hudson river in front of the property with equal propriety and with equal relation to the master's business.

On the day in question Merlin Smith seems to have disappeared from view some time in the early part of the afternoon, and was found crushed and maimed by the elevator in the River street building between four and five o'clock. The only possible connection with the master's business is found in the fact that one of the little trucks, used by the Bartle Corporation in sending goods from one point to another, was found empty near the elevator in the River street building where the accident occurred. The forelady of the Bartle Corporation who had immediate charge of the boy testifies that she should and did have in her room two of these trucks at the time of the

accident; that this was her equipment and that it was present in the Federal street building and under her charge at the time this third truck was found near the accident, and the evidence is without dispute that Tashjian, the independent contractor, made use of these trucks at times in delivering his work to the factory or taking it away, and it is not shown that the Smith boy had anything to do with the truck being in the River street building near the elevator. In short, there is no evidence whatever that the claimant's intestate was performing any part of his duties as an employee of the Bartle Corporation at the time the accident occurred. The fact that the accident occurred during the hours that he should have been doing his work is not evidence that he was actually engaged in such employment, while the fact that he received his injuries while upon the premises of a third person, without right or authority from any one, is conclusive, it seems to us, that he was not engaged in the master's business at the time of the occurrence. Nothing that the master required of him required his presence in this River street building; everything that was within the scope of his employment demanded his presence in the Federal street building, and the presumptions which might attach to his case if he had been found where it was his duty to be, cannot be made to reach out and cover a case where the decedent was where he had no legal or practical right to be in the performance of his duties. The master had provided an elevator, with an operator, for moving things from one floor to another, and even if the decedent had been shown to be actually engaged in transporting goods from one point in the factory to another no reason suggests itself why the burden of compensation should be borne because the employee chose to commit a trespass and to go outside of his regular employment. He was not employed to operate an elevator; certainly not to operate an elevator upon the premises of a third party. That was no part of the business of the Bartle Corporation, and it is only those accidents which arise out of and in the course of his employment (Workmen's Compensation Law, § 10) which are to be compensated. When he left the premises of his employer and abandoned the duties of a floor boy to operate an elevator upon the premises of a third party he ceased to be an employee within the meaning

of the statute. An employee is defined in the act as a person engaged in one of the hazardous employments " upon the premises or at the plant, or in the course of his employment away from the plant of his employer." (§ 3, subd. 4, as amd. by Laws of 1917, chap. 705.) There was no employment of the claimant's intestate " away from the plant of his employer." His employment was " upon the premises or at the plant " of his employer. No duties were required of him at any other point than at the factory in the Federal street building, and he was forbidden to make use of the fire doors for the purpose of reaching the point where the accident occurred.

The decedent was clearly not within the provisions of the act, and the award cannot lawfully be sustained.

The award should be reversed, and the claim dismissed.

COCHRANE, J., concurred.

Award affirmed.