LIZZIE DULAC, Petitioner

*vs.*

DUMBARTON WOOLEN MILLS

AND

AETNA LIFE INSURANCE COMPANY, Appellant.

Penobscot.   Opinion March 11, 1921,

*An employee after finishing her work and in leaving the building to return to her*
*home, there being two exits from the floor where she worked to the street, and a*
*stairway leading to the basement from which there was an exit by a back way to*
*her home, takes a freight elevator not used by employees for the purpose of exit*
*with knowledge of employer, to reach which it was necessary to go through*
*a door into another room and pass through an alley way, the elevator*
*being in an extension built onto the main building, and is injured,*
*such injury is not the result of an accident "arising out of and in the*
*course of his employment." The accident must be due to a risk*
*which the employee is exposed "while employed and because*
*employed by employer," and must occur while employee is*
*doing the duty which he is employed to perform, all*
*of which the burden is on the petitioner*
*to show.*

This case comes up on an appeal from the finding of the chairman of the Indus-
trial Commission in favor of the petitioner.

The essential facts as found by him are as follows:—

The only question raised in the case is whether or not the injury to the peti-
tioner is due to an accident arising out of and in the course of her employment.

The facts brought out in the evidence which was introduced at the hearing were
briefly as follows:—

Lizzie Dulac was, on the 28th day of August, 1919, an employee of the Dum-
barton Mills at Dexter, Maine. Her work was in what was known as the
card room of the mill. On the day in question she had finished her work
and was leaving the building to return to her home. There were two exits
from the floor of the mill where the card room was located, which went out
to the street level. There was also a stairway leading from the card room
to the basement of the mill, one floor below the card room. By going to the
basement floor Mrs. Dulac could go to her home a back way which was shorter
than by going out on the street level from the card room floor. Besides the

stairway leading from the card room floor to the basement floor, there was an elevator used to carry freight between the basement and the other two floors of the mill. On the particular night in question, Mrs. Dulac, instead of going down the stairway to the basement, took the elevator. The injury occurred in the basement as she was getting out of the elevator.

The elevator was installed and used for the purpose of carrying freight to the mill. The evidence shows that it was used some by individual workman in going up and down, and by the plaintiff, as she says a maximum of eighteen times during her eight years' employment.

There is no evidence that the respondent or any of its agents knew of the plaintiff's personal use of the elevator. On the day of the injury, she was alone on the elevator and attempting to operate it herself, and was injured as the testimony unquestionably shows by her own ignorance of how to operate. But the manner of the accident is not material. Her act is not barred by Section 8.

Under these admitted facts and circumstances was she injured in an accident 'arising out of and in the course of her employment?'

*Held:*

1.  That the relationship of the plaintiff and defendant are contractual. Their common law relations of master and servant are allowed to be changed by the consent of the parties. By formal written notice, they are authorized, but not compelled, to modify their rights and their remedy as prescribed by the common law, R. S., Chap. 50, Secs. 6 and 7.

2.  That among other things, the employee agrees that his right to recover shall occur from an accident 'arising out of or in the course of his employment.'

3.  That the burden of proof is on him to establish these facts.

4.  That the accident must have been due to a risk to which the employee was exposed 'while employed, and because employed by the defendant.'

5.  That an injury is received in the course of the employment when it comes while the workman is doing the duty which he is employed to perform.

6.  That the use of the elevator was no part of the work, duty or privilege of the petitioner's nor incidental to her work.

7.  That the accident did not occur in the course of the plaintiff's employment.

On appeal. This case went to the Law Court on an appeal from a decision of the chairman of the Industrial Accident Commission in favor of the petitioner. The petitioner for several years had worked in the card room of the Dumbarton Woolen Mills at Dexter, Maine, and on the 28th day of August, 1919, having completed her work for the day, on leaving the mill to return to her home, her work being on the second floor, she took a freight elevator, operating the same herself, from the second, or card room floor, to the basement floor. On

leaving the elevator she was caught between the floor of the elevator and the gate and was injured. The elevator was a freight elevator used to carry freight from floor to floor, and not used to the knowledge of employer as a passenger elevator. There were two exits from the second floor to the street, and a stairway leading from the second floor to the basement floor from which there was an exit by a back way. The only question involved was as to whether the accident resulting in the injury arose out of and in the course of the employment of petitioner. Appeal sustained. Decree reversed. Petition dismissed.

The case is fully stated in the opinion.

*W. B. Pierce*, for petitioner.

*Andrews & Nelson, and W. T. Gardiner*, for respondents.

SITTING: SPEAR, HANSON, PHILBROOK, MORRILL, SCOTT, JJ.

SPEAR, J. This case comes up on appeal from the finding of the chairman of the Industrial Commission in favor of the petitioner.

The essential facts as found by him are as follows:—

"The only question raised in the case is whether or not the injury to the petitioner is due to an accident arising out of and in the course of her employment."

The facts brought out in the evidence which was introduced at the hearing were briefly as follows:

Lizzie Dulac was, on the 28th day of August, 1919, an employee of the Dumbarton Woolen Mills at Dexter, Maine. Her work was in what was known as the card room of the Mill. On the day in question she had finished her work and was leaving the building to return to her home. There were two exits from the floor of the Mill where the card room was located, which went out to the street level. There was also a stairway leading from the card room to the basement of the Mill, one floor below the card room. By going to the basement floor Mrs. Dulac could go to her home a back way which was shorter than by going out on the street level from the card room floor. Besides the stairway leading from the card room floor to the basement floor, there was an elevator used to carry freight between the basement and the other two floors of the Mill. On the particular night in question, Mrs. Dulac, instead of going down the stairway to the basement, took the elevator. The injury occurred in the basement as she was

getting out of the elevator.  The respondents contend that in using the elevator Mrs. Dulac placed herself outside of the provisions of the Workmen's Compensation Act in that the use of the elevator was forbidden to employees except in handling freight, and further, that no part of Mrs. Dulac's work required the use of the elevator in any way.

The elevator was installed and used for the purpose of carrying freight to the mill, with a landing on the same floor as the card room where the petitioner worked but not in or near that room.  To reach the elevator shaft from the card room, it was necessary to go through a door into another room and pass up a short alley-way, into the elevator building which constituted an ell on the mill building.  The elevator consisted merely of a platform 7 or 8 feet square with two sides and a beam across.  It is too evident for controversy that this crude elevator, situated as it was, was not intended for passenger purposes.  Although the evidence shows that it was used some by individual workmen in going up and down, and by the plaintiff, as she says a maximun of eighteen times during her eight year's employment.

There is no evidence that the respondent or any of its agents knew of the plaintiff's personal use of the elevator.  On the day of the injury, she was alone on the elevator and attempting to operate it herself, and was injured as the testimony unquestionably shows by her own ignorance of how to operate.  But the manner of the accident is not material.  Her act is not barred by Section 8.

Under these admitted facts and circumstances was she injured in an accident "arising out of and in the course of her employment?"

(1)  What part of her employment did this accident arise out of? Undoubtedly her entrance and departure from the building and premises in coming to her work or going to her house was a part of her employment.  But if there were several regular avenues of approach and departure designed for these express purposes, has an employee a right to take a forbidden and hazardous way instead of the safe and regular way and hold the employer liable?  While the evidence may warrant the conclusion that this elevator was used occasionally by the employees, in moving between the floors, yet it would be puerile to claim that the plaintiff, who had been in the mill eight years, did not know that this elevator was installed and used for freight and not personal service.  She knew there were several avenues of approach and departure, designed for these express purposes.

A mathematical calculation, based upon her own testimony, will show that, if she worked three hundred days a year, she used these regular avenues of entrance and exit, about two thousand four hundred times, while using the elevator, giving the maximum to her own testimony, only eighteen times. The average use of the elevator would be once in 133 days.

Under this analysis of facts, according to the highest claim of the plaintiff, there is no evidence, whatever, that she used the elevator, on the day of the accident, with the impression that it was the regular, usual or accustomed way for her to go from her work room to the street. The evidence is also conclusive that the employer would not have permitted her to have attempted to operate the elevator had he known she had, or intended to do so. He had notices posted against the use of it by any employee.

It was a dangerous machine. He knew it. The law of self preservation was ample incentive to forbid and prevent its use. The conclusion is therefore inevitable both from the undisputed testimony and the overwhelming circumstances, that this elevator was not intended for personal use nor as a means of ingress or egress from the factory. Her own testimony is conclusion upon this point. She says:

Q. Did anybody ever see you riding in that elevator?

A. I don't think so.

Q. And you never did that (used it) when anybody was around to see you, did you?

A. No.

She then says she never saw any one go down on the elevator.

### ON DIRECT EXAMINATION

Q. When people got through work at night, have you seen them go down in the elevator?

A. No.

Again on direct

Q. I will ask you again. Did you ever go down on the elevator before.

A. Yes, three or four times she had gone down that way.

Q. When people got through work at night have you seen them go down in the elevator?

A. No.

Q. Do you understand what Mr. Cloutier (interpreter) says?

A. Yes.

There can be no misunderstanding upon the important fact that she never saw any operator use the elevator for exit, and that no one ever saw her use it for that purpose.

In corroboration, if corroboration is needed, Leach, for five years overseer of the card room, in which Mrs. Dulac worked, says:

Q. Did you ever see Mrs. Dulac on the freight elevator?

A. No.

In regard to the use of the elevator, he says:—

Q. Is it in sight all the time?

A. No, you have to go through a little door and into this elevator building, and there is a little passageway of four or five feet, before you get to the elevator.

Q. What direction do you give to your employees in regard to using the elevator?

A. Don't give any because we don't have to use it.

Q. It isn't used by your room?

A. My room doesn't use it, nobody that works there uses it. From a fair analysis and statement of evidence, the following facts are established beyond any question.

1. That the plaintiff was never seen to use the elevator, and never saw any other person use it for the purpose of leaving the building.

2. That she knew of no permission by usage by seeing it used by a single other person for the purpose of exit.

3. That her employer had no knowledge that she ever used it, or intended to use it.

4. That it was a freight conveyor and not intended for use by the employees.

5. That the plaintiff knew this as well as the employer, or any any other operative knew it.

The chairman of the commission however, notwithstanding the above facts, proven by the evidence of the plaintiff herself, and supported by all the other testimony, holds, as we understand his finding, that the only defense to the claim must be found in Section 8, by showing a wilful intent to cause the accident. There was no wilful intent within the meaning of the statute. It requires neither argument nor citation to establish that fact.

Accordingly the only ground upon which the finding of the chairman could be based is that it was the habit of the employees to to use the elevator for the purpose of exit, and that the plaintiff had a right to do as the others did, upon the implied consent of the employer. But it is evident that for one to invoke the use of a particular usage, as this was, as a reason or excuse for changing contractual relations, it must first be shown that such usage is known to the party invoking it. Such knowledge is absolutely negatived by the plaintiff's own testimony.

In *Norton* v. *University,* 106 Maine, 436, it is said; In the first place it was not claimed to be other than a local usage and as such it could have no effect unless known to both parties so that they might be presumed to have contracted with reference to it. If not known to the parties, their rights and liabilities could in no event be affected by it. The burden rests upon the plaintiff to prove such knowledge.

In *Stevens* v. *Reeves,* 9 Pick., 197, it is said with reference to invoking the custom that an operative in a factory should give two weeks' notice of an intention to quit; In order to make this a part of the contract, as the usage supposed is a particular one, and not a general custom, it should here appear that the defendant knew the usage, when he entered upon the work or before he left it. This is required in order to give effect to a particular usage, so as to operate upon a contract.

That the use of the elevator in question, if used by the employees, was a particular one, not a general custom, needs no discussion. *Bodfish* v. *Fox,* 23 Maine, 90. See also *Norton* v. *University of Maine,* 106 Maine, Page 440.

That the relationship of the plaintiff and defendant are contractual needs no discussion. Their common law relations of master and servant are allowed to be changed by the consent of the parties. By formal written notice, they are authorized, but not compelled, to modify their rights and their remedy as prescribed by the common law, R. S., Chap. 50, Secs. 6 and 7.

Among other things the employee agrees that his right to recover shall occur from an accident "arising out of or in the course of his employment." This is clearly a contractual right. The burden of proof is on him to establish these facts. *Westman's Case,* 118 Maine, 135; *Mailman's Case,* 118 Maine, 172.

The plaintiff, in the present case, does not bring her contention within the doctrine of the English case, *McGuire* v. *Gabbott*, 10 N. C. C. A., 356, when a hoist in which the petitioner was ascending, gave way, in which the court say: "But it was habitually used by the foreman in charge of the building and by the men every morning when they came." The usage was known to all and also a means of conveyance employed by the defendant.

Nor do the facts bring it within the rule of the *Von Ette's Case*, 223 Mass., 56, where the men were working, by night, in a compositor's room, poorly ventilated with a temperature at times of one hundred and ten degrees. The plaintiff went out upon an adjoining roof for air, fell from the roof and was killed. In holding that the accident arose out of his employment, the court say, upon the question of usage; "There was ample evidence of a general practice of the men who worked in the composing room to go out upon the roof to get fresh air and cool off on hot nights and that such practice was known to the employer."

The court say upon these facts: "The question whether the injury arose out of and in the cause of his employment is one of some difficulty. A majority of the court are unable to say that the finding of the board was wrong. The accident happened upon the premises of the employer and although, in view of the practice which might have been found to exist under which the men went upon the roof for fresh air, that the act of the deceased, in going there a warm night, was not necessarily outside of his employment, but could have been found to have been incidental thereto."

This case, by a divided court, clearly turns upon the fact of a "practice found to exist" and known to the decedent and employer alike. Hence, their contractual relations were modified in respect of the scope of employment.

But no such relation is found in the case at bar.

In Mailman's case the court define the phrase "arising out of and in the cause of the employment:" "But these elements must appear. The accident must have arisen out of and in the course of the employment. In other words, it must have been due to a risk to which the deceased was exposed while employed, and because employed by the defendant." It will be seen from this definition, which is the best we have yet observed, that there are two distinct elements of proof, namely, risk while employed, and risk

because employed. See *Westman's Case*, 118 Maine, 139. Let us pass the first element "while employed" and apply the test of the second, "because employed." In Westman's case the second element is further defined as follows: "An injury is received in course of the employment when it comes while the workman is doing the duty which he is employed to perform," this is quoted from *McNicol's Case*, 215 Mass., 497.

Can it be said under the evidence and circumstances that the plaintiff was injured "because employed," or while she was doing the duty which she "was employed to perform?"

On the contrary the plaintiff's own evidence proves that the use of the elevator was no part of her work, duty or privilege; that it was not incidental to her work; that she never saw an employer use it, nor does she know that any person ever saw her use it for the purpose of exit; that it had no connection with the room in which she worked, that it was situated entirely apart from it "in a little building built on" and could be reached only by going through "a little door" and "into the elevator building" and through "a little alleyway, four or five feet before you get to the elevator;" that she had no occasion to use the elevator for exit as there was "a good easy flight of stairs" leading from the card room directly to the floor below, and that there were two regular exits from her room directly to the street,—on the street level.

The admitted facts in this case take it out of the realm of uncertainty or even conjecture. They negative any causal relation between the plaintiff's employment and her use of the elevator. As seen, it was neither a part of nor in contemplation of her employment. The reverse, rather is true.

We are therefore, of the opinion that the accident did not occur in the course of the plaintiff's employment.

Under the conceded facts, we are of the opinion, also, that the plaintiff's case cannot be regarded as an injury "arising out of her employment." Westman's case lays down this rule: "The great weight of authority sustains the view that these words "arising out of" mean that there must be some causal connection between the condition under which the employee worked, and the injury which he received. Under this test, if the injury can be seen to have followed as a natural incident to the work, and to have been contemplated, by a reasonable person familiar with the whole situa-

tion as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed apart from his employment."

Again it is said: "It might with safety be said that, in order for the accident to arise out of the employment, the employment must be the proximate cause of the accident."

Recalling, without restating the facts, can it be said that there is any causal connection between the conditions under which the plaintiff worked and her injury? That her injury was the result of the exposure occasioned by the nature of her employment? If so what was it? She had no occasion to use the elevator. She was not authorized to use it, whether she knew it or not, it was against the rule. She had no knowledge of any usage, or implied consent of the employer, as it or its agents never saw or knew her to use it.

Not only was her use of the elevator, not a natural incident to her work to have been contemplated, but an unexpected incident, not reasonably to have been contemplated. She never was known by any person, her employer, its agent or other employee, as her evidence proves, to use it for the purpose of exit. There was no incident or fact upon which the employer could base even a conjecture, much less a "contemplation," that she ever had or ever would use the elevator as she did. Accordingly we are unable to find any evidence whatever that her injury can "fairly be traced to the employment as a contributing, proximate cause."

As much as we regret the misfortune of this case, it is yet a matter of legal interpretation which the court is bound to recognize regardless of the parties involved.

Recognizing the force of the statute that the finding of the chairman shall be final in the absence of fraud, we are nevertheless, of the opinion that, upon the undisputed facts in the case at bar, there was no adequate evidence for the finding and consequently, as a matter of law it should be set aside.

*Appeals sustained.*
*Decree reversed.*
*Petition dismissed.*