Before STATE INDUSTRIAL BOARD, Respondent.
EDWARD ARCHAMBALD, Claimant, Respondent, v. LAKE CHAMPLAIN PULP AND PAPER COMPANY and Another, Appellants.

Third Department, March 7, 1923.

Workmen's compensation — claimant, grinderman in pulp mill, was injured by falling down freight elevator shaft after checking out — rules required him to stay until relief man came — relief man had not arrived at time of accident — rule that freight elevator should not be used by employees except in transporting material was not enforced — injury arose out of and in course of employment.

A claimant received an injury arising out of and in the course of his employment, where it appears that he was employed in a pulp mill as a grinderman; that the rules of the company required him to stay until he was relieved by the day man; that at the time of the accident the claimant had checked out but the day man had not arrived at the plant; that the claimant went to the freight elevator shaft intending to use the elevator to go from an upper floor to the basement in which he was employed, and supposing that it was in position, which was not the fact, lifted the gate and stepped off into space and fell; that the rule posted in the freight elevator that it was not to be used by workmen except when carrying some product of the mill was never enforced as against the employees, and that claimant had never been personally warned not to use the elevator.

APPEAL by the defendants, Lake Champlain Pulp and Paper Company and another, from an award of the State Industrial Board, made on the 17th day of August, 1922.

*Clarence B. Tippett,* for the appellants.

*Carl Sherman, Attorney-General [E. C. Aiken, Deputy Attorney-General,* and *W. E. Pierce* of counsel], for the respondents.

KILEY, J.:

The plaintiff is what is called a grinderman in a pulp mill. The significance of which term is, that in a pulp mill the wood is ground into pulp for the purpose of making paper or boxes. The above-named employer ran a pulp and paper mill at Plattsburgh, N. Y. Claimant worked for said company as such grinderman. At the time pertinent here the grinder was being run the full twenty-four hours of the day, night and day shifts, by two men, claimant and a partner. They were paid for thirteen hours for the night shift and eleven hours for the day shift. One partner could not leave the grinder until he was relieved by the other. The exact time that either commenced or ended his shift depended on what time the relieving partner arrived at the plant. On April 1, 1922, the claimant had had the previous night shift and checked out at six-twenty-seven A. M. His partner had not arrived at the grinder and claimant went from the basement to the upper floor to find him. He had, after checking out, filled the grinder again with wood, and as he did not find his partner he said he had to go down to the grinder room to fill the grinder again, which had to be refilled every ten minutes. There was a freight elevator running from the floor where he was at that time to the basement or the floor upon which the grinder was located. It was posted as a freight elevator and not to be used by workmen except when carrying some product of or for the mill up and down; it ran to the second story. It was not light at that place and it was about seven o'clock in the morning of the aforesaid day. He lifted the gate, supposing the elevator was there, which was not there in fact, and stepped off into space and fell about twenty feet to the bottom of the pit; he received the injuries for which he has been awarded compensation. The only objection raised by the appellants on their brief is that the injuries did not arise out of and in course of the employment. That is based upon the fact that the injury occurred after he had checked out, and that he disobeyed the instructions not to use the elevator except when he had some commodity to take up or down in the building. The first proposition is abundantly answered by the evidence, uncontradicted, that he had to stay until the arrival of his partner at the grinder, no matter whether he had checked out or not, and that he had not arrived at the grinder room at the time he started down the elevator. As to the second part, viz.,

that he disobeyed the rule as to the use of the elevator, it appears from the evidence of the foreman in charge that the rule was made, not in the interest of the employees, that the elevator should, at all times, be available for carrying freight; that it was safe and was run and used by all employees, both to carry freight and to ride in without freight, and that the rule was never enforced; that no one ever told claimant or the many employees called upon the hearing, personally, not to use the elevator. It was so used before the accident and continued to be used after the accident in the same manner. Claimant made contrary and conflicting statements on this branch of his case, but as a question of fact was presented by his explanation, we cannot disturb the finding. It is urged that this finding cannot stand because of our holding in *Hamberg* v. *Flower City Specialty Co.* (202 App. Div. 113). In that case the young girl who was killed by the alleged forbidden use of the elevator was personally warned not to use the elevator. We said in the opinion in that case: " It affirmatively appears that this girl had been told to keep away from the elevator." This case is easily distinguished from *Urban* v. *Topping Brothers* (184 App. Div. 633). This case is strengthened, if not controlled, by the opinion in *Etherton* v. *Johnstown Knitting Mills Co.* (184 App. Div. 820), where the use of a boiler room was forbidden the employees, but was not enforced. Mr. Justice H. T. KELLOGG said: " The acquiescence of the employer in this practice was sufficient to abrogate the rule." The same rule is upheld in *Smith* v. *Bartle Mfg. Corp.* (189 App. Div. 426; affd., 228 N. Y. 564).

The award·should be affirmed, with costs to the State Industrial Board against the carrier.

Present — H. T. KELLOGG, Acting P. J., KILEY, VAN KIRK, HINMAN and HASBROUCK, JJ.

Award unanimously affirmed, with costs in favor of the State Industrial Board.