Before STATE INDUSTRIAL BOARD, Respondent.

HANNAH A. EBBERMAN, Respondent, *v.* WALTHER & Co. and Another, Appellants.

Third Department, May 8, 1924.

**Workmen's compensation — accident arising out of and in course of employment — employee, contrary to specific instructions, attempted to use freight elevator and was killed — employee was not within employment when killed — burden was on claimant to show that accident arose out of and in course of employment.**

An employee whose duties were on the fifth floor of a building which was equipped with stairways and also had a freight elevator connecting the several floors, was not within his employment when he raised the gate on the elevator shaft during the absence of the operator, and, in the apparent belief that the elevator was on that floor, stepped into the elevator shaft and fell to the basement, where it appears that there was a notice on the elevator warning people to keep off and that it was for freight use only, and where it further appears that while employees were permitted to ride on the elevator with the operator, they were specifically instructed not to do so when he was absent.

The burden was on the claimant to prove that the accident arose out of and in the course of the employment and if there was any reason why the deceased approached the elevator, opened the gate and stepped in, which would bring him within the employment, the claimant should have proven that reason.

APPEAL by the defendants, Walther & Co. and another, from an award of the State Industrial Board, made on the 1st day of October, 1923.

*Arthur Butler Graham* [*John Preston Phillips* of counsel], for the appellants.

*Carl Sherman*, Attorney-General [*E. C. Aiken*, Deputy Attorney-General, of counsel], for the respondent.

COCHRANE, P. J.:

The duties of the deceased employee were on the fifth floor of the building. Stairways led to the various floors. There was also a freight elevator connecting them. The deceased reported for duty and was seen to approach the elevator at the first floor, raise the gate, and step in, apparently thinking the floor of the elevator was flush with the first floor of the building. The elevator was not there. He stepped into vacancy, fell to the basement, and lost his life. There was an operator employed to use the elevator. He reported for duty at seven-thirty A. M. The accident happened on February 10, 1923, a few minutes after seven A. M. There was a notice on the elevator reading: " Danger — for freight use only," and every door on the elevator shaft had a notice reading: " Keep off of this elevator." The employees were permitted to ride on the elevator with the operator but were instructed not to do so when he was absent. This case is similar to *Hamberg* v. *Flower City Specialty Co.* (202 App. Div. 113) where an employee lost her life in the operation of an elevator contrary to instructions. It is distinguishable from the case of *Archambald* v. *Lake Champlain Pulp & Paper Co.* (204 App. Div. 651) because in that case the rule against the use of the elevator by the employees was unenforced and by common custom abrogated. Here there is no evidence that the elevator was ever used by employees in the absence of the operator after the employment of the latter a year or more before the accident. When the deceased approached the elevator and lifted the gate thereof he was out of his employment. He must have known that the operator was not there. His purpose evidently was to operate it himself for his own convenience instead of walking up the stairs. He was not merely performing an authorized act by an unauthorized method but he was performing an act unauthorized by any method. His dereliction consisted not in the manner of performance but in any performance relating to the elevator. If there was any justifiable reason why the deceased approached the elevator and opened the gate and stepped in, the claimant should have proved such reason. Contrary to the ruling of the referee at the hearing the burden was on the claimant to prove that the accident arose out of and in the

course of the employment. There is no evidence to that effect. All the evidence is to the contrary.

The award should be reversed and the claim dismissed, with costs against the State Industrial Board.

All concur.

Award reversed and claim dismissed, with costs against the State Industrial Board. _____