(No. 20223.—

MARY L. NEWBERRY, Plaintiff in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(BESSIE PHINNEY, Defend-
ant in Error.)

*Opinion filed October 25, 1930—Rehearing denied Dec. 9, 1930.*

SASS & HOOD, (GEORGE C. BLISS, of counsel,) for plain-
tiff in error.

STOFFELS & STOFFELS, (HARRY GOODMAN, and HER-
BERT R. STOFFELS, of counsel,) for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error, Mary L. Newberry, by leave of this court has sued out a writ of error to review a judgment of the circuit court of Cook county confirming an award of the Industrial Commission against her, in favor of Bessie Phinney, for compensation at the rate of $12.50 per week for 300 weeks under the Workmen's Compensation act, for accidental injuries resulting in the death of Daniel P. Phinney, her husband.

There is no dispute as to the facts. On September 29, 1927, Daniel P. Phinney, who was employed as a watchman at a building located at Townsend and Huron streets, Chicago, was found dead at the bottom of the elevator shaft in the basement of the building. This particular building, which was owned by plaintiff in error, was a double or L-shaped building occupied by various tenants, who were her lessees. The principal lessee was the VanPelt Branch of the United Last Company, which under the terms of its lease occupied the four floors and the basement of the building at 440 West Huron street. On the Townsend street side it occupied the basement. Under the terms of the lease to the United Last Company the latter was to have possession of the dry kiln opening off the first floor and the engine and boiler house, with appurtenances. The lease further provided that the lessee should furnish steam heat necessary for the entire building, also power to operate the elevator and air compressor, steam to operate the house pump and pumping water for supply tanks, and remove all cinders made in the operation of the plant during the term of the lease. At the time of the accident the fifth floor of the building on the Huron street side was occupied by the Manufacturers Glass Company. The first floor on the Townsend street side was occupied by the Manufacturers Plate Company, the second, third and fourth floors by the Beecher Manufacturing Company, and the fifth floor by Dodge & Ascher, Inc. Under the terms of their leases the

lessees agreed to furnish their proportionate share of the watchman's salary. The leases provided that the lessees pay their rent at the office of C. F. Durland & Co. C. F. Durland & Co. acted as agent of the landlord to collect the rent, take care of the repairs and pay the taxes. Plaintiff in error did not hire the deceased, Phinney, as watchman or direct Durland to hire him. At the hearing on arbitration Herman Woinowski was called as a witness on behalf of the claimant. It appears from his testimony that he was employed by the VanPelt Branch of the United Last Company as engineer and had been in its employ about nineteen years; that he was the engineer of the building and that deceased was supposed to work under his direction. The deceased's duties were those of night watchman, taking care of the building, pulling clocks and cleaning fires in the morning. His hours of duty were from 6:00 P. M. until 5:30 A. M. He was the only man employed in the building at night and was left in charge of the building by the engineer, Woinowski. The premises occupied by the various lessees were not open at night. In case Phinney was unable to attend to his duties at night, Woinowski would hire someone else to take his place or else stay on duty himself. The deceased received as wages for his services $25 a week, which was paid every two weeks through C. F. Durland & Co. Most of the checks for the wages of deceased were made payable to Woinowski, who in turn endorsed them and gave them to the deceased. The various tenants of the building paid the wages of the deceased as watchman of their premises to C. F. Durland & Co. The deceased was employed as watchman in 1926 by Patterson, who was manager of the VanPelt Branch of the United Last Company. Part of the duties of the deceased was that of cleaning out the ashes, which under the terms of its lease was an obligation of the United Last Company. Woinowski, the engineer for the United Last Company, instructed Phinney as to his duties as night watchman. He

had twelve clocks to pull each hour and there were key stations on each floor, the clocks being located in various parts of the building. As a rule the deceased carried a lantern. The stairways were lighted. It was not necessary for the deceased in performing his duties as night watchman to use the elevator, and he had specific instructions from Woinowski not to use it. There was a rule that had been in force in the building for a number of years to the effect that no car was to run at night, and deceased was so specifically instructed by Woinowski. On the last night the deceased went to work Woinowski threw off the switch disconnecting the power to the particular elevator that Phinney was later found under and closed the doors leading into the pit. When Woinowski came to work the next morning he entered the building by a window. He did not see the deceased and started to look for him. He found his lighted lantern near the elevator doors. The doors leading to the elevator shaft were open and the switch operating the elevator was on. He could not start the car and did not notice Phinney until he attempted to start the elevator. He then saw that Phinney was beneath the elevator platform with his hand around the cable.

After Phinney's death his widow filed her application with the Industrial Commission for compensation, which application contains, among other things, the following:

"Bessie Phinney, wife of Daniel P. Phinney, deceased, petitioner, *vs.* C. F. Durland and Mary L. Newberry, respondents.

"The petition of the undersigned respectfully shows to this honorable commission the following, to-wit:

"1. That on the 29th day of September, 1927, Daniel P. Phinney received an injury by reason of an accident arising out of and in the course of his employment by the above named C. F. Durland, which injury resulted in the death of said employee on, to-wit, the 29th day of September, 1927. * * *

"3. The following particulars relative to this application are herewith given:

"(a) Name of injured employee, Daniel P. Phinney. Address, 3639 North Paulina street, Chicago, Illinois.

"(b) Name of employer, C. F. Durland. Place of business and address, 35 North Dearborn street."

The name of plaintiff in error is nowhere mentioned in the application except in the title as above set forth.

At the hearing before the arbitrator it appeared that the respondent C. F. Durland died subsequent to the filing of the application for adjustment of claim. No motion was ever made to amend the application, and there are no allegations anywhere in the application that Mary L. Newberry was the employer or that the deceased received an injury which arose out of and in the course of his employment with her. The Workmen's Compensation act does not prescribe the character of pleading under the act but it recognizes the right of a party to file a document in the nature of a pleading, which, when filed, becomes a part of the record. The charge or statement of the claim and the findings of the commission in making the award should be consistent. (*Consumers Co.* v. *Industrial Com.* 315 Ill. 592.) The petition fails to show such consistency and harmony when it names one party as employer of the petitioner and the order of the commission makes an award against another and entirely different party. (*Winnebago County* v. *Industrial Com.* 336 Ill. 466.) Deceased was not an employee of plaintiff in error but of the several tenants of the building, by whom he was hired and who severally agreed in their leases to pay their proportionate share of his wages. The evidence does not show that any payment of his wages was ever made by her or on her behalf.

The deceased had specific instructions from his superior not to use the elevator, his use of which caused his death. A master has the right to conduct his business in his own way according to his own rules. His employees

have no right to undertake to conduct his business for him in disregard of his rules, even though they believe it to be in his interest for them to do so. The evidence introduced as to the directions given to deceased and his disregard of them, showed that he was without the scope of his employment at the time of the accident. (*Lohr* v. *Barkmann Cartage Co.* 335 Ill. 335.) A servant outside the scope of his employment is as much a stranger to his master as any third person. *Johanson* v. *Johnston Printing Co.* 263 Ill. 236; *Oxford* v. *Peter,* 28 id. 434.

Mrs. Phinney was not entitled to an award against plaintiff in error, and the judgment of the circuit court is reversed and the award of the Industrial Commission is set aside.

*Judgment reversed and award set aside.*