J. J. Metting, et al., Respondents, v. Lehr Construction Company, Appellant.—32 S. W. (2d) 121.

Kansas City Court of Appeals. November 3, 1930.

*Stringfellow* and *Garvey* for appellant.

*Randolph* and *Randolph* for respondent.

BLAND, J.—This is an appeal by defendant from a judgment of the circuit court of Buchanan county setting aside an award of the Workmen's Compensation Commission and remanding the case to that body to ascertain and determine the amount due plaintiffs. The commission found that plaintiffs were not entitled to any compensation for the death of their son because he was killed by an accident that did not arise out of and in the course of his employment.

The facts show that deceased, a young man nineteen years of age, was employed by the defendant as a laborer in the construction of a set of concrete grain storage tanks in the city of St. Joseph. To what height the storage tank in question was constructed at the time of the death in controversy is not shown in the testimony. A work tower had been erected, along the side of one of the tanks, containing platforms seven to nine feet apart connected by ladders. Attached to this tower was a wooden beam from which a rope and pulley were suspended, which were installed for the purpose of hoisting materials. One end of this rope was attached to a steam hoist on the ground below and the other was run through the pulley and, "as a rule," was attached to a weight on or near the ground. When material was to be hoisted the end of the rope attached to the weight would be loosened and tied to the material. The rope and pulley hung about three feet to the south of the platforms of the tower. There were upwards of one hundred men employed upon the work and the ladders between the platforms were constructed for their use in going up and down the tower. There was also a ladder or stairs in the "head house" which was about 400 feet from where the men were working. It required about ten minutes longer to go down the stairs in the head house than to descend the tower ladders. However, some of the men used the

stairs in the head house. These, as well as the tower ladders, could have been used by deceased in descending at the time he was killed.

At the time of the accident deceased was working at the top of the concrete tanks. The workmen had finished their day's labor and were descending to the ground below. Deceased, standing on the top platform of the tower, reached over the railing of the platform and caught hold of the rope about three feet away. One witness testified that deceased "just reached over and grabbed this rope and the first thing I knew he was gone." Deceased caught the end of the rope which was fastened to the hoist and, the other end being loose, the rope slipped through the pulley and he fell to the ground below to his death. There is no testimony as to the whole distance that deceased fell. One witness testified that he was on the third platform or landing from the bottom when deceased "passed" him in falling; that this platform was from twenty-four to twenty-seven feet above the ground.

There was testimony that there were several instances where others had used the rope upon which to slide down. A number of workmen testified that they had never been instructed not to use the rope. There was also testimony that the superintendent was supposed to issue orders forbidding employees to slide down the rope but there is no testimony that any one actually gave an order of this kind, except that one of the employees testified that he had been instructed by the foreman "not to allow the men to go down the rope;" that these men were not working under him; that he told some of them (5 or 6) not to slide down the rope, but not all of them; that the foreman instructed him to furnish him with the names of those who used the rope and he would discharge them, but that none was discharged.

Defendant's president testified that he had a conversation with deceased's mother after the accident and that she said to him that deceased "had been going down the rope" and that she had cautioned her son on the morning of the accident, before he went to work, not to go down it.

It is the contention of the defendant that "the commission's finding that the accident did not arise out of and in the course of employment is a finding of fact and is conclusive and binding upon the court on appeal." This is true only if the evidence supports the finding. Inquiry as to whether or not the accident arose out of and in the course of the employee's employment involves a law question. Therefore, the result of such an inquiry is a legal conclusion rather than an ultimate fact, and while it is proper for the Board to include in its findings its general conclusions respecting the matter, such conclusions are reviewable by the courts, and when so reviewed they are binding upon the courts only when justified by the ultimate facts. The courts will not consider such conclusions of

law in determining whether, under the ultimate facts, the injury or death was the result of an accident and whether it grew out of and in the course of deceased's employment, as those terms are used in the statute. So we will determine the question for ourselves, from the facts taken in their most favorable light to the conclusion of the commission that the death did not arise out of and in the course of deceased's employment. [Inland Steel Co. v. Lambert, 118 N. E. 162; In re Bentley, 104 N. E. 432 (Mass.); In re Mathewson and companion cases, 116 N. E. 831 (Mass.); Deitzen Co. v. Industrial Board of Illinois, 116 N. E. 684 (Ill.); Cotter v. Valentine Coal Co., 14 S. W. (2d) 660; Section 44, Workmen's Compensation Act, see Laws 1927, p. 512.]

It is a further contention of the defendant that the deceased came to his death under circumstances and at a place where his duties did not require him to be and where no duty connected with his employment was being performed; that, therefore, under the terms of the Workmen's Compensation Act the accident was not compensable. Section 3 of the act, Laws 1927, p. 492, provides that in order for there to be compensation the injury or death of the employee must be "by accident arising out of and in the course of his employment." Section 7 (c) of the act provides:

"Without otherwise affecting either the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of such employment,' it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such services." (Laws 1927, p. 496).

This contention of the defendant raises the question as to whether or not there was "sufficient competent evidence in the record to warrant the making of the award." [See Section 44 of the Act, Laws 1927, p. 513.] In this connection it will be proper for us first to determine the meaning of the statute providing that the accident must arise out of and in the course of the employee's employment. It is well settled that it is incumbent upon the claimant to prove both that the accident arose "out of" and "in the course of" the employment, but the courts have found great difficulty in attempting to formulate a comprehensive definition of these terms. However, the showing of the one without the other will not be sufficient to authorize the making of an award in favor of a claimant. Generally speaking, the injury or death is received "in the course of" the employment when it is sustained while the workmen is engaged in a duty which he is employed to perform.

"The words 'arising out of' refer to the origin or cause of the accident, and are descriptive of its character, while the words 'in the course of' refer to the time, place and circumstances under which the accident takes place." [Schneider on Workmen's Compensa-

tion Law, ·p. 500.] See also, Dambold v. Industrial Commission et al., 154 N. E. 128, 129 (Ill.). An accident "arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a casual connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment.

It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a natural consequence." [In re. Am. Mut. Liability Ins. Co. and companion cases, 102 N. E. 693, 697.] See, also, Wahlig v. Grocer Co., 29 S. W. (2d) 128.

"Beyond this the authorities also hold that the risk may be either an ordinary or an extraordinary one, so long as it bears a relation to the employment; that it may originate either from or outside of the employment, if the exposure to such risk is peculiar to the employment; that it may arise from the negligent or reckless manner in which the employee himself performs the work he is authorized to do, so long as the act is not wholly beyond and disconnected from his employment; and that it may even be one arising from the act of the employee in the doing of something ancillary to his employment, and essential to his own personal comfort and convenience." [Jackson v. Euclid-Pine Inv. Co., 22 S. W. (2d) 849, 851.]

In the case of The Union Colliery Co. v. The Industrial Commission, 298 Ill. 561, the Supreme Court of Illinois quoted approvingly from an English authority as follows:

"The sole question in this cause is whether the man was outside the sphere of his employment. It does not matter in the slightest degree how many orders he disobeys or how bad his conduct may have been if he was still acting within the sphere of his employment and in the course of it and if the accident arose out of it."

Ordinarily the act of leaving the premises by an employee, after his day's work is done, is as much "in the course of" his employment as engaging in the actual work which he is employed to do. There is no question but that deceased was yet engaged in his employment when he was killed. [Dunlac v. Dumbarton Woolen Mills, 112 Atl. 710, 711 (Me.); 1 Schneider on Workmen's Compensation Law, section 268, ·p. 538; 1 Bradbury on Workmen's Compensation, pp. 338, 403, 405, 419, 422.]

However, a serious question arises as to whether or not the accident arose "out of" deceased's employment. Many cases have been cited by both parties upon this point, but as was well said in Inland Steel Co. v. Lambert, supra, l. c. 166:

"The courts in compensation cases have frequently recognized the difficulty of determining in any particular case whether an injury is suffered by an accident arising out of the employment, by applying the standard of some other case, and as a consequence have frequently said that each case must be determined from a consideration of its own facts."

In the case at bar we are of the opinion that the act of deceased in attempting to leave his work in the manner in which he did was not so wholly unconnected with and beyond his employment as would justify us in saying that it did not arise "out of" and "in the course of" his employment. His act, we think, can reasonably be said to have been incidental to and within the sphere of his employment. The evidence in this case shows that divers of defendant's employees, including plaintiff, had been using this method in descending to the ground and that this practise was common enough to have come to the attention of the foreman, who instructed one of the employees to see to it that none of the men continued to come down the rope. However, this employee did not fully obey his instructions, for the reason that he told only five or six who were "only some of" the employees who were guilty of this practise. The foreman did not regard the practise as of a nature serious enough to require his personal attention, that is, he did not instruct the men in person with reference to the method or delegate the matter to any person having authority over the men, nor did the defendant, itself, by any other means attempt to stop the practise. The foreman told the employee to furnish the names of the men who were indulging in this practise and the foreman would discharge them. None was ever discharged. There was apparently no notice posted forbidding the practise. The supposition was that the superintendent had given orders in the matter but there is no evidence that this was done, unless from the direction of the foreman to the employee, as aforesaid, it may be reasonably inferred that the superintendent took some action in reference to it. The employee to whom the foreman delegated the matter had no authority over the men and none to see that the order was obeyed.

It is quite apparent that only a half hearted effort was made by defendant to stop the practise. While the method deceased used in leaving his work would not appear to the average man as safe for one self, and may have been negligent, we are not now concerned with the question of negligence, but whether or not deceased met his death from circumstances arising "out of" and "in the course of" his employment. Deceased was a young man and he and others had

descended the rope safely on other occasions and, no doubt he would have done so in this instance had not the unusual occurred, that is had the loose end of the rope been fastened as was the rule. [See Clem v. Chalmers Motor Co., 114 S. W. 848, 850 (Mich.).] Under all of the circumstances it was an act that the defendant reasonably might have anticipated deceased would do and was not wholly beyond or disconnected with his employment. ''It has been said that an injury which occurs while the employee is doing what he might reasonably do at the time and place is one which arises out of and in the course of the employment.'' [1 Schneider on Workmen's Compensation Law, p. 502.]

We have examined the cases cited by the defendant and find them not in point. Some of these cases involve circumstances where the employee was injured in going to or from his work before he reached or after he left his employer's premises, when his employment did not begin until he entered his employer's premises and ended when he left them. Others of these cases involve situations where the employee was injured in taking a route, or means of conveyance, of his employer, over his master's premises, or a route or conveyance over the premises of others, where he was engaged upon a mission of the employer, that was unusual and dangerous and the employer could not have reasonably anticipated that the employee would have taken such a route or means of conveyance. Others of defendant's cases involve situations where the employee was injured while doing something that made him a mere volunteer or one who introduced himself into a matter of his employer that did not concern him and was none of his business.

Perhaps the nearest case, upon the facts involved in the case at bar, that has been cited by the defendant, is Dunlac v. Dumbarton Woolen Mills, supra. But in that case no one but the injured employee had used the freight elevator in which to descend in leaving the building, and no notice of such use by the employee was brought home to the employer. The case at bar is more like the one of Clem v. Chalmers Motor Co., supra, wherein an employee, undertaking to slide down a rope, fell to the ground and received injuries which resulted in his death. In that case compensation was adjudged. However, we regard the case at bar much stronger in favor of compensation than the Clem case.

Under the facts developed before the commission in this case compensation should be awarded. There possibly may be other facts that could be developed that would tend to show that the case is not compensable. What the proper practise should be in such a case we need not say as defendant has raised no point in reference to the matter but tacitly admits that the case is to be determined upon the present record.

The judgment, therefore, is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.