(No. 21096.—

THE ATLAS LINEN SUPPLY COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN H. BLISS, Defendant in Error.)

*Opinion filed February 19, 1932—Rehearing denied April 12, 1932.*

ANDREW J. FARRELL, (ALBION M. GRIFFIN, of counsel,) for plaintiff in error.

MAYER, MEYER, AUSTRIAN & PLATT, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The superior court of Cook county confirmed an award under the Workmen's Compensation act in favor of John H. Bliss against his employer, the Atlas Linen Supply Company, and a writ of error has been allowed to review the judgment.

The only question presented is whether or not the accidental injury arose out of the employment.

Bliss' employment was as an engineer and general handy man at the laundry at 1034 Wrightwood avenue, in Chicago. He also supervised the mangles, and with Hayes, the manager, looked after the help. Robert E. McKee was the owner of the laundry, which he conducted under the name of the Atlas Linen Supply Company. A new building was in process of construction and the old building in process of destruction by an independent contractor, Louis Ashbeck & Son. None of the employees of the plaintiff in error was used in that work. New walls had already been built around and above the old walls on September 25, 1929, when the accident occurred. On that day workmen of the contractor were engaged in tearing down the old boiler room. They quit work at 4:30 in the afternoon, leaving the four timbers which had supported the roof above the boiler room still in place. At one end these

timbers were set securely into a two-story brick wall and at the other they rested upon an insecure frame partition wall badly rotted at the bottom. This wall was fourteen feet high. The timbers were of pine, eight by eight inches and ten feet or more long. The boiler was sixteen feet long, rising eleven feet above the floor, and the cast-iron header-pipe was about a foot higher than the boiler. Bliss testified that in the event the beams fell they would break the steam pipes, suddenly release the steam and it would be liable to cause an explosion and break the boiler. After the men employed in wrecking the old building left on September 25 Bliss climbed upon the insecure partition wall and set out with a wrecking bar to loosen the timbers, intending to remove them after five o'clock, when the laundry closed, with the aid of men employed in the laundry. The wall almost at once fell in over the boiler, the timbers slipping over it as it fell, being prevented by the fallen wall from coming in contact with the pipes which Bliss feared their fall would break. No pipe was broken, but Bliss fell backward and received the injuries for which the award was made.

Before the arbitrator Bliss testified that Robert E. McKee told him to watch the wreckers so they would not break a steam pipe; that when the wreckers quit on the 25th Bliss suggested to McKee that Bliss and the boys in the washroom take the timbers down so that the other crew would not break the steam pipe, and that McKee said for him to go ahead. Bliss then started to loosen the timbers so that they could be taken down quickly after closing time. McKee testified, in complete contradiction of Bliss, that he saw some of Ashbeck's men working there and ordered them to quit, and then told Bliss, "You stay back in that boiler room and don't let anybody get on that wall until I get hold of Ashbeck in the morning, because I am afraid somebody will get hurt. If those timbers are disturbed that whole business is going to come down. You

stay right back in this boiler room and don't leave here." McKee's idea was that the timbers could not be taken down without hurting somebody except by the use of a derrick, and he had so told Ashbeck.

The testimony of Bliss was weakened by the testimony of Harry Michaelson, a court stenographer, who accompanied Alvin F. Hans, an investigator for the Central West Casualty Company on October 4, 1929, to the Alexian Brothers Hospital to interview Bliss, who was a patient there. Michaelson took shorthand notes of the questions asked by Hans and the answers of Bliss, and these were received in evidence on the hearing. In response to Hans' questions Bliss answered that nobody told him to go up there—he just wanted to be a good scout and keep somebody else from getting hurt and was not figuring on that coming down so suddenly. The interview continued:

Q. "It is not really any part of your work to do that, was it?

A. "Well, no. Well, my work was everything around the place.

Q. "But the contractor was the one that was doing the work on the building and it was up to him to take them down?

A. "Yes.

Q. "Your work is connected with the laundry and working around the laundry there?

A. "Yes.

Q. "In other words, that getting up there was not one of your duties?

A. "No, not really none of my duty, only I wanted to keep others from getting hurt and being scalded with steam.

Q. "After the laundry closed?

A. "Yes.

Q. "Mr. McKee or Mr. Hayes didn't tell you to do that, did they?

A. "They didn't have to tell me to do it.

Q. "In other words, it was really the contractor's job to do that work, wasn't it?

A. "Yes.

Q. "As a matter of fact, you really had no business up there on the timbers at all?

A. "Well, no; not in a way.

Q. "In other words, you were not doing the work that you were required to do around the laundry there when you were up there?

A. "No."

The arbitrator refused to award compensation and the cause was reviewed by the Industrial Commission. No additional evidence was introduced except that Bliss testified in somewhat greater detail but with no substantial variation from his testimony before the arbitrator, and that Henry G. Johnson, a boiler inspector for the city of Chicago, testified that he had been engaged in the field of engineering about twenty years, and that covers the field of stationary engineering, steam and refrigeration boilers and their appurtenances, and "the duty of a licensed engineer is to maintain, have charge of a steam boiler and the connected machinery thereto, including all the prime movers—the prime movers which may be directly connected or indirectly connected with the boiler, piping and those different similar matters, and to maintain them in safe condition, so as not to endanger property or life."

The decision of the commission on review set aside the decision of the arbitrator, found that the petitioner had sustained accidental injuries which arose out of and in the course of his employment and was temporarily incapacitated for a period of fourteen and four-sevenths weeks, made an award of $15 a week for temporary total incapacity for work on account of this injury and $137.25 on account of necessary medical, surgical and hospital services.

Upon the hearing before the commission the condition of the evidence upon the question whether or not McKee

directed Bliss to take down the beams with the aid of laundry employees was not changed. The conflict remained irreconcilable, and the testimony of Bliss was weakened by his previous statement made while in the hospital. It was the province of the Industrial Commission to consider all the testimony and give it such weight as under all the circumstances it was entitled to receive. We are not warranted in reversing the finding of the commission unless the award is shown to be clearly contrary to the manifest weight of the evidence. (*Donk Bros. Coal Co.* v. *Industrial Com.* 325 Ill. 193.) The burden of proof was upon Bliss to show by evidence from which the inference could be fairly and reasonably drawn that the accidental injury arose out of the employment. If the award of the commission is manifestly against the weight of the evidence it should be set aside. (*Illinois Bell Telephone Co.* v. *Industrial Com.* 325 Ill. 102; *Berry* v. *Industrial Com.* 335 id. 374.) The statement of Bliss made to Hans on October 4, when he was in the hospital, not only tended to cast discredit upon his testimony but was completely contradictory of it. If that statement was true his conflicting testimony is false. There is nothing to impeach the truth of that statement. The award cannot be sustained except by wholly ignoring it.

It is argued that it was within the line of Bliss' duty to protect the steam plant of the laundry, and that his violation of McKee's order could amount to no more than negligence in the performance of his duty, which would not bar his right to compensation. The case of *Imperial Brass Co.* v. *Industrial Com.* 306 Ill. 11, is cited in support of this argument. In that case the injured employee was a janitor, who in the course of his duty of cleaning a urinal used sulphuric acid, which he had been forbidden to use instead of gold dust, which he was directed to use, and was injured by the fumes of the acid, and it was held that the use of the acid instead of the gold dust did not take him out of the sphere of his employment to clean

the urinal. Bliss was not employed to assist in wrecking the old building. The dangerous condition arose out of work which McKee had contracted to have done by other persons. The danger was not one which arose out of work with which Bliss had anything to do or which could be avoided by anything within the line of his employment as an engineer. An employer has a right to conduct his own business in his own way by his own agencies and according to his own rules, and his employees have no right to interfere with the conduct of his business or the performance of work which they are not employed to do, even though they believe it to be to his interest for them to do so. *Newberry* v. *Industrial Com.* 341 Ill. 554.

The judgment of the superior court is reversed and judgment is entered here setting aside the award.

*Judgment reversed and award set aside.*