[S. F. No. 15451. In Bank.—January 29, 1936.]

PACIFIC EMPLOYERS INSURANCE COMPANY, Petitioner, v. MARIA CHAVEZ and INDUSTRIAL ACCIDENT COMMISSION, etc., Respondents.

W. N. Mullen for Petitioner.

Everett A. Corten and Emmet J. Seawell for Respondents.

THE COURT.—The petitioner seeks to annul an order of the Industrial Accident Commission which awarded a death benefit to the mother of the deceased employee.

Joseph Chavez was employed as a night watchman for the Western Wool Manufacturing Company at its mill and storehouse in San Francisco. The plant, consisting of three floors and a basement, was equipped with American District Tele-

graph fire and watchman's signal system. The signal boxes were so installed and arranged that they must be punched in regular order and at specified times by specially designed keys, in order that proper inspection be recorded. It was Chavez' duty to perform this service every hour, commencing at 6 P. M. on the first floor and proceeding thence to the upper floors. He was instructed to use the stairways leading from one floor to the other, in order to obtain complete inspection, and not to use the elevator, except "chasing for a fire". It was a rule of employment generally applicable to all employees that the elevator was to be used only for handling freight and not as a passenger elevator. On the evening of March 15, 1934, the recording due a few minutes after 6 did not register at the office of the American District Telegraph and an inspector went to the plant to discover the cause. He searched the premises and found Chavez unconscious in the basement just outside of the bottom of the elevator shaft. Chavez' key showed that it had been used in the boxes on the first floor and was set for the next box to be keyed. The elevator was at the third floor and the elevator gate at the first floor was up and jammed to such an extent that considerable force was required to lower it. Chavez died the next day without regaining consciousness sufficiently to be able to state how he had incurred his injury.

There was testimony on the part of employees that when they left the plant and Chavez arrived on the evening of May 15th at 5 o'clock the elevator was at the second floor and that the safety gates on all of the floors were down. The locked condition of the safety gate on the first floor, and the further fact that that gate was out of order and would not remain up without support, however, indicated that these witnesses might have been mistaken as to the position of the safety gate on the first floor. If that gate was up when Chavez went on duty, it might be inferred from the circumstances that, by accident, he fell down the elevator shaft. Furthermore, as noted, there were two ways to go from floor to floor, by the stairway and by the elevator. If no instruction had been given Chavez to refrain from using the elevator in making his rounds and he could, at his option, use either means to ascend to the upper floors, there could be no room for the claim that the injury was not one arising out of and in the course of the employment. Or if it appeared beyond dispute that Chavez was at-

tempting to use the elevator for the authorized purpose, namely, "chasing for a fire", there could be no room for the claim that he was not acting within the scope of his employment.

The petitioner insists that the only reasonable inference to be drawn from the facts is that the employee, at the time of his injury, was attempting to use the elevator and for an unauthorized purpose in disobedience of his instructions. The respondents take the position, and we think justifiably, that, since there is no direct evidence as to the purpose of the employee in using the elevator, it is just as reasonable to infer from the circumstances that he was attempting to use the same for an authorized purpose, and that it is more reasonable so · to infer because not to do so and to draw the inference contended for by the petitioner would be to convict the employee of disobedience of his instructions. The petitioner argues that there was no evidence of fire at a time after the accident when the body of the employee was found near the bottom of the elevator shaft. Even so, it is likewise true that there was no direct evidence that the conditions actuating the conduct of the employee at the time he fell down the shaft did not justify his presence near the elevator. This, coupled with the inference that the injury might have been caused by accident, tends to support the conclusion of the commission that the injury occurred within the course of the employment.

It is the law of this state that where death occurs to an employee during his hours of employment and the factual situation may reasonably give rise to conflicting inferences on the question whether the injury which caused death arose out of and in the course of the employment, the finding of the commission supporting an award of compensation to dependents will not be disturbed. (*Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587 [200 Pac. 17] ; *Western Grain etc. Co.* v. *Pillsbury*, 173 Cal. 135 [159 Pac. 423] ; see, also, *North Pac. S. S. Co.* v. *Industrial Acc. Com.*, 174 Cal. 500 [163 Pac. 910], and *United States Fidelity etc. Co.* v. *Industrial Acc. Com.*, 174 Cal. 616 [163 Pac. 1013].)

Also in numerous cases in this state awards of compensation have been upheld "where employees were found dead with no witnesses to the accident, but there were traumatic injuries inferentially attributable to the employment, with no proof of

other cause of death'' (*Eastman Co*. v. *Industrial Acc. Com.,* *supra,* and cases cited therein at page 590).

The foregoing cases in this state would seem to control the disposition of the petitioner's contention. In view of the qualified instruction received by the watchman and the permitted use of the elevator for some purposes, it is not the function of this court to say that the commission was wholly unjustified, on the factual situation before it, in concluding that the employee was acting in the pursuit of his duties as a watchman in accordance with his instructions. We may not then disturb the finding of the commission that the injury was inferentially attributable to the employment.

It therefore becomes unnecessary to pass upon the contention advanced by the respondents that in any event a disobedience of instructions on the part of the employee was no more than serious and wilful misconduct within the terms of section 6 (a) (4) of the Workmen's Compensation Act (Stats. 1917, p. 834), which provides for a reduction by one-half of compensation otherwise recoverable in cases where the injury is caused by the serious and wilful misconduct of the employee except that serious and wilful misconduct is not a defense to the claim of dependents if the injury result in death.

On the point that Chavez was guilty of such disobedience of instructions as would exclude compensation, numerous cases in other jurisdictions have been cited. A general rule is declared in *Hibberd* v. *Hughey,* 110 Neb. 744 [194 N. W. 859], as follows: ''The general rule is that an injury arises out of his employment when the servant is performing some service for the master, although in a manner contrary to his instructions; and this because he is acting within the scope of his employment and his departure from instructions were mere acts of disobedience.'' While recognizing that general rule, the court nevertheless applied to the facts there involved an exception declared in cases which hold that disobedience of a positive order as to the place where the work is to be performed constitutes a departure from the employment and that an injury then occurring does not arise out of and in the course of the employment. There are cases which hold that by his disobedience of unqualified instructions the employee has departed from the sphere or course of his employment and thereby rendered his injuries noncompensable. (*San Francisco & S. R. Co.* v. *Industrial Acc. Com.,* 201 Cal. 597 [258

Pac. 86] ; *Fourner's Case,* 120 Me. 236 [113 Atl. 270, 23 A. L. R. 1156] ; *Dulac* v. *Dumbarton Woolen Mills,* 120 Me. 31 [112 Atl. 710] ; *Hibberd* v. *Hughey, supra; Hamberg* v. *Flower City Specialty Co.,* 202 App. Div. 113 [195 N. Y. Supp. 170] ; *Ebberman* v. *Walther & Co.,* 209 App. Div. 248 [204 N. Y. Supp. 406] ; *Cassell* v. *C. F. Mueller Macaroni Co.,* 99 N. J. L. 270 [122 Atl. 242] ; *Newberry* v. *Industrial Acc. Com.,* 241 Ill. 554 [173 N. E. 472] ; *Moyer* v. *Packard Motorcar Co.,* 205 Mich. 503 [171 N. W. 403] ; see *Pacific Coast Casualty Co.* v. *Pillsbury,* 31 Cal. App. 701 [162 Pac. 1040].) The cases in which compensation has thus been denied, however, are grounded upon the absence of any reasonable inference appearing to the fact finding body that the employee had any duty to perform in being where we was or that his act was consistent with his instructions or with permission implied from the surrounding facts. In a case where the evidence was conflicting as to whether the employee was making a permitted use of an elevator, the court refused to disturb a finding adverse to the employee. (*Miliato* v. *Jack Rabbit Candy Co.,* (Mo. App.) 54 S. W. (2d) 779.) In cases where the commission found that the employee met his death while making a permitted use of the elevator, although the use thereof generally was prohibited, the award was upheld. (*American Mutual L. Ins. Co.* v. *Hardy,* 36 Ga. App. 487 [137 S. E. 113] ; *Rockford Cabinet Co.* v. *Industrial Com.,* 295 Ill. 332 [129 N. E. 142] ; *Archambald* v. *Lake Champlain Pulp & Paper Co.,* 204 App. Div. 651 [198 N. Y. Supp. 679].) The last cited cases tend to support the theory of the respondents herein, but, as indicated, it is unnecessary to resort to adjudications in other states, for the reason that our own decisions are adequate in the disposition of this proceeding.

The remaining contention of the petitioner is that the commission exceeded its powers in finding that the mother of the decedent, to whom the award was made, was totally dependent upon the decedent. The mother had been a widow since 1905. The facts before the commission were that the son turned over to her his entire earnings, that both of them lived together on such earnings and that the mother had no other source of income. These facts support the commission's conclusion that the mother was wholly dependent upon the decedent. (*Peterson* v. *Industrial Acc. Com.,* 188 Cal. 15 [204 Pac. 390].) The fact that she had collected $340 from

insurance on the life of her son would not change the result under the holding in the last cited case.

The award is affirmed.

Rehearing denied.