Edward T. Farish, Plaintiff in Error, *v.* John E. Cook, Defendant in Error.

### December 17, 1878.

The words "I give and bequeath to A. all my worldly goods, consisting of household furniture, clothing, bed and bedding, money, and cattle; likewise my house and lot I now occupy," contained in a will, are ineffectual to pass other real estate owned by the testator at the date of the will and at the time of his death.

Error to St. Louis Circuit Court.
*Affirmed.*

Henry W. Williams, for plaintiff in error, cited : *Perrin* v. *Blake*, Burr. 2579 ; *Smith* v. *Bell*, 6 Pet. 68 ; *Dugans* v. *Livingston*, 15 Mo. 230 ; *Peters* v. *Carr*, 16 Mo. 54 ; *Brown* v. *Dysinger*, 1 Rawle, 415 ; *Jackson* v. *Honsel*, 17

Johns. 281; *Wheaton* v. *Andress*, 23 Wend. 452; *Dowdel* v. *Hamm*, 2 Watts, 61; *Harper* v. *Blean*, 3 Watts, 471; *Noel* v. *Hoy*, Madd. 38; *Korn* v. *Cutler*, 26 Conn. 4; *Wright* v. *Shelton*, 18 Jur. 445.

GLOVER & SHEPLEY, for defendant in error, cited: *Doe* v. *Earle*, 15 Mee. & W. 450; *Wilson* v. *Major*, 11 Ves. 205; *Henderson* v. *Farbridge*, 1 Russ. 479; *Bullard* v. *Gaffe*, 20 Pick. 252; *Brown* v. *Dysinger*, 1 Rawle, 415; *Dalmeter's Estate*, 1 Whart. 362; *Smith* v. *Hutchinson*, 61 Mo. 87; *Bowlin* v. *Furman*, 34 Mo. 39.

LEWIS, P. J., delivered the opinion of the court.

This is an action of ejectment for possession of a tract of two by forty arpents situate in the Grand Prairie Common Fields of St. Louis. The Circuit Court, sitting as a jury, gave judgment for the defendant.

The plaintiff's testimony tended to show a chain of title derived from a Spanish concession and a confirmation by the United States government, whereby the property belonged in 1827 to Louis Tesson Honoré. In that year he died, leaving a last will and testament which contained the following bequest: "I give and bequeath to my beloved wife, Amaranthe Honoré, all my worldly goods, consisting of household furniture, clothing, bed and bedding, money and cattle; also whatsoever debts may be due me; likewise my house and lot I now occupy in the city of St. Louis, to be by her enjoyed during her life, and at her death to belong to the child with which she is pregnant, if it should survive her; if not, then the said house and lot to be vested absolutely in my said wife, to be by her disposed of as she may think proper."

Amaranthe Honoré, the widow, gave birth to a female child after her husband's death, and on January 31, 1832, intermarried with Louis Ledue. The posthumous daughter of Honoré, Marie Louisa, was, on April 26, 1848, married to William Booth. Her mother, Mrs. Ledue, died on

November 24, 1864. On August 3, 1874, William Booth and Marie Louisa, his wife, conveyed to the plaintiff.

The defendant's testimony tended to show a color of title derived from the government, and that defendant had held continuous, open, notorious, and exclusive possession of the land in controversy, under claim of title, from the year 1845 until the commencement of this suit, which was in February, 1875. The court gave a single instruction for the defendant, sustaining hyphothetically his defence of the Statute of Limitation. No other instruction, given or refused, appears in the record.

As, in our view, the true interpretation of the will of Honoré effectually disposes of this case, it will be unnecessary to consider the other matters which counsel have ably discussed on both sides.

The court excluded the will from consideration, as not devising the land in controversy. If this ruling was correct, it is manifest that the defence of limitation was fully sustained. But if, as the plaintiff insists, the widow of the testator took a life-estate under the will, her disability of coverture in 1845, when the right of action accrued, and the like disability of Mrs. Booth in 1864, when the remainder took effect, would, it is contended, defeat the bar of limitation.

In interpreting a will, the fundamental object is to ascertain what the testator intended. It is always to be presumed that the words used by him were employed in their conventional signification, unless it clearly appears from the context that a different meaning was in the testator's mind. We should therefore first settle the conventional application of the words before us, and then look into the evidences of an intended signification of different effect.

It is not claimed that the land in controversy is specifically mentioned in the will. But the plaintiff holds that it is included in the expression "all my worldly goods." It is admitted, as it must be, that in the strict or common

acceptation of these words, land is not covered by them. It is contended, however, that the testator has followed them up by an explanation of what he means by them; and that this shows his intention to include all his lands. By the plaintiff's construction, the words of the bequest might be transposed so as to exhibit the exact intention of the testator as follows: "I give and bequeath to my beloved wife, Amaranthe Honoré, all my worldly goods, to be by her enjoyed during her life, and at her death to belong to the child with which she is now pregnant, if it should survive her. My worldly goods consist of household furniture, clothing, bed and bedding, money and cattle; also debts due to me; likewise a house and lot, which I now occupy, in the city of St. Louis. If the unborn child does not survive its mother, then the said house and lot is to be vested absolutely in my wife, to be disposed of as she may think proper."

Upon this it is argued that inasmuch as the testator has declared his "worldly goods" to consist of a house and lot in the city of St. Louis, together with other things mentioned, therefore it is manifest that he considered that piece of real estate as covered by the term "worldly goods," and it follows that by "all my worldly goods" he meant all his real estate as well as the personalty.

There are two fatal errors in this mode of interpretation as here applied. In the first place, if we could accept the transposition as truly reproducing the original meaning, the plaintiff's conclusion would by no means follow. We are not shown any reason why the words "consisting of" should be perverted from their common acceptation. They are not synonymous with the word "including," as the argument would require. This, when used in connection with a number of specified objects, always implies that there may be others which are not mentioned. "A party of men, including the plaintiff's five brothers," may imply that there were some who were not brothers of the plaintiff.

But "a party consisting of the plaintiff's five brothers" comprehends nobody outside of that number or relation. Webster defines the expression "to consist of" as meaning "to be composed or made up of;" and adds that it is used when we wish to indicate the parts which "unite to compose a thing." Other lexicographers give a like definition. According to this, the testator did not intend to bequeath any thing but what was specifically mentioned as "uniting to compose" his worldly goods. The land in controversy was omitted from the category.

But we do not perceive that the plaintiff's transposition retains the real meaning of the testator. The words "also" and "likewise" must be taken, as the plaintiff truly says, in a copulative and not in a disjunctive sense. They couple what follows them with the predicate which precedes. This predicate is, "I give and bequeath to my beloved wife," etc. Thus, if we supply ellipses, the reading will be: "I give and bequeath  *  *  *  all my worldly goods, consisting of household furniture, clothing, bed and bedding, money and cattle. I give and bequeath  *  *  *  *also* whatsoever debts may be due me. I give and bequeath  *  *  *  *likewise* my house and lot I now occupy," etc. This, it seems to us, is the customary, rational, and grammatical method of construing all such collocations of phrases. It is a strained construction which couples the words "also" and "likewise" with the expression "consisting of." It might be otherwise if the particle "of" had been repeated after each of those conjunctive members.

It is true that we should not depend upon grammatical niceties for the interpretation of a will. But in this instance the grammatical interpretation is obvious at a glance, and nothing whatever appears to indicate that any thing else was intended. On the contrary, this construction is confirmed by another feature in the bequest. The particular disposition made of "the said house and lot" segregates this from the objects previously bequeathed, and shows this be-

quest to be special and independent, and not embraced in the general disposition of " all my worldly goods."

We are therefore of opinion that the land here in controversy was not intended to be embraced in the provisions of the will. The judgment will be affirmed. Judge HAYDEN concurs; Judge BAKEWELL not sitting.