W. H. LYNCH, DEFENDANT IN ERROR, v. GLEANER COMBINE HARVESTER CORPORATION ET AL., PLAINTIFFS IN ERROR.*

Kansas City Court of Appeals. May 20, 1929.

*Corpus Juris-Cyc References: Workmen's Compensation Acts, —CJ, section 85, p. 95, n. 6; section 90, p. 97, n. 30.

*Shughart & Johnson* for plaintiff in error.

No brief for defendant in error.

BLAND, J.—This is a proceeding by writ of error involving a judgment of the circuit court affirming an award of the Missouri Workmen's Compensation Commission.

The facts show that defendant in error, on July 7, 1927, was employed in operating a punch press by the Gleaner Combine Harvester Company at Independence. In the course of his work the glove on his right hand was caught in the machine and when the die came down the end of the distal phalanx of the second finger on his right or major hand was crushed off. As a result he lost a third of the distal phalanx of the finger.

Plaintiff's employer carried a liability insurance policy in the Zurich General Accident & Liability Insurance Company, one of the plaintiffs in error in this case. Lynch, the defendant in error,

was being paid a wage of $45.96 per week at the time of his injury. Lynch ceased work immediately following the accident. On July 23, 1927, the Gleaner Combine Harvester Company, the insurer and Lynch entered into an agreement under the terms of which he was to be paid compensation under the Compensation Act. It was agreed that under the terms of the Act he was entitled to receive compensation at the rate of $20 per week during the period of disability after the first three days. Compensation was paid Lynch by the insurance company at the rate of $20 per week.

On August 6, 1927, the employer, the insurer and Lynch entered into a final agreement concerning Lynch's injury. By the provisions of this final agreement the parties decided that Lynch suffered the loss of half of the distal phalanx of the middle finger of the right hand. For this injury the employer and the insurer agreed to pay compensation at the rate of $20 per week for a total of thirteen weeks. Lynch having been paid at that time compensation at the rate of $20 per week for three weeks six and one-half days or a total of $78.54, the employer and the insurance company agreed to continue payments at the rate of $20 per week for an additional period of nine and one-fourteenth weeks, making a total payment of $260, in addition to medical aid as provided in the Act. [Section 13, Laws 1925, page 384.]

This final agreement was forwarded to the Commission and was received by it on August 8, 1927. The Commission refused to approve the agreement, but returned it, stating that under the Compensation Act Lynch was entitled to receive compensation at the rate of $20 per week for a total period of twenty-two and two hundred eighty-five thousandths weeks. The employer and the insurer refused to agree to the ruling of the Commission and the Commission notified Lynch who filed a notice of disagreement and a request for a hearing. The cause was then set down for hearing before the Commission and on September 12, 1927, a hearing was conducted by one of the Commissioners who determined that Lynch instead of losing a half of the distal phalanx had lost only one-third thereof. The Commissioner then made the following finding of facts:

"In the Act of compensation periods for amputations of the major second finger are thirty-five weeks for the whole finger, thirty weeks for half of it and twenty-six weeks for a fourth of it (distal phalanx). A third of the whole finger is the distal phalanx plus the distal third of the second phalanx, the compensation period for amputation of which is $26\frac{1}{3}$ of (30-26)$=27\frac{1}{3}$ weeks. According to section 17(a) of the Act the period for one-third of the distal phalanx should bear the same relation to that for the whole phalanx

as the period for one-third of the finger bears to that for the whole finger. Expressed arithmetically this is

$$\tfrac{1}{3}\ \text{distal} = 27\tfrac{1}{13}, \text{ from which}$$

$$\overline{\qquad 26 \qquad\qquad 35 \qquad}$$
$$\tfrac{1}{3}\ \text{distal} = 26 \times 27\tfrac{1}{3} = 20.305\ \text{weeks.''}$$

It was determined that Lynch was entitled to compensation for twenty and three hundred five thousandths weeks at the rate of $20 per week. However, the employer and the insurance company were given credit for compensation paid to that date in the amount of $178.59.

A review of the findings of the Commissioner was applied for by the employer and the insurance company and after a hearing before the full Commission a final award was entered by it on December 10, 1927, affirming the original award made by the Commissioners. The cause was duly appealed to the circuit court by the insurance company and the employer. The court, after reviewing the record as certified to by the Commission, entered a judgment affirming the award of the Commissioner. The employer and the insurance company have brought the cause to this court by a writ of error. Defendant in error has not favored us with a brief.

It is contended by the plaintiffs in error that the court erred in allowing compensation for more than eight and two-thirds weeks, as section 17(a) of the Act (Laws 1925, pages 384, 385), provides for compensation for only twenty-six weeks for a loss of the middle finger of the major hand at the distal joint and Lynch lost but one-third of the distal joint of his right hand; that consequently he was entitled to compensation for only one-third of the twenty-six weeks or eight and two-thirds weeks.

Section 17(a) of the Compensation Act declares certain injuries scheduled therein to be permanent partial disabilities, including the loss of fingers and thumbs on both hands and the loss of various joints of such fingers. The Act provides compensation for thirty-five weeks for the loss of the middle finger at the proximal joint of the major hand; for thirty weeks for the loss of such finger at the second joint of the major hand and for twenty-six weeks for the loss of such finger at the distal joint of the major hand.

After scheduling the various injuries with the number of weeks compensation should be paid therefor, the statute reads:

"For permanent injuries other than those above specified, the said compensation shall be paid for such periods as are proportionate to the relation which the other injury bears to the injuries above specified, but no such period shall exceed four hundred weeks. Such other injuries shall include permanent injuries causing a loss of earning power."

It is the contention of the plaintiffs in error that under the provisions of the statute that we have just quoted the compensation is to be based upon the portion of the distal joint lost by the employee, and that there is no basis in the statute for the computation made by the Commission. We think this point is well taken. The construction given section 17(a) by the Commission is unwarranted. It seemed to be the theory of the Commission that Lynch's compensation, instead of being based upon the relation between the injury that he received to the injuries specified in the schedule, should be based in part on a certain arbitrary computation made by the Commission as to what constitutes a third of the whole finger (no evidence being introduced upon the subject). The Commission then took the proportion of the phalanx that Lynch lost and attempted to work out a proportion between that and a third of the whole finger. The Commission did not find the relationship between the part of the finger actually lost by Lynch and a loss of the whole finger, or the relationship between the part of the distal phalanx lost and the whole phalanx, and it would appear beyond any question that the statute means that the compensation should be based upon either one of the other.

The statute schedules various injuries. It schedules separately loss of the entire finger, loss of the finger at the second joint and loss of the finger at the distal joint. It does not schedule any loss of less than a phalange or joint so we are compelled to go to the part of the statute above quoted to find out what the loss was in this case. Here the injury was to the distal joint of the middle finger of the major hand by the loss of one-third of the joint. While the loss was one-third of the distal joint it also, in a sense, was a loss to the whole of the finger. The statute seems to contemplate that the compensation should be based upon the smallest division of the member as it provides for thirty-five weeks for the loss of the entire finger, thirty weeks for the loss of the second joint and twenty-six weeks for the distal joint. While there is no geometrical progression worked out or suggested in the statute based upon the loss of the various phalanges in relation to the entire finger, the statute does indicate that the nearer the tip of the finger is approached in its amputation or loss, the greater the relative loss. Therefore, it would appear that where there has been a loss of a portion of one of the phalanges compensation should be based on the particular phalange as a unit instead of the entire finger. Consequently we conclude that the contention of the plaintiffs in error is correct and as defendant in error has lost one-third of the distal joint of the middle finger of his major hand, he is entitled to compensation for one-third of twenty-six weeks or eight and two-thirds weeks.

It is claimed, however, that the Commission has no right to allow anything for permanent partial disability, for the reason that there is no evidence that Lynch suffered any loss of earning power by reason of his injury.

The evidence shows that Lynch was able to return to his work at the end of thirty days after the receipt of his injury but did not return. Whether the mere fact that he was able to return to his work establishes that he did not suffer any loss of earning capacity is questionable but we need not go into the matter, for if it were necessary that the Commission find that he had suffered any loss or earning capacity, then there is no testimony whatever that he did so. However, it is quite apparent that no evidence upon this subject was required for it was unnecessary for the Commission to find that there was any loss of earning power on the part of Lynch. Section 17(a) of the Statute in effect provides that the employee, if he receives the injuries therein specified, shall be presumed conclusively to have been disabled. There is no theory disclosed in this section, or section 22 to which it refers that compensation is to be based on loss of earning power, but rather upon the disabilities mentioned therein. The statute covers disability due to the loss of a member, or a part of a member or of a function rather than a mere loss of earning power. [De Zeng v. Pressey, 86 N. J. L. 469; Barbage v. Lee, 87 N. J..L. 36.]

The provision of the statute which we have quoted providing "such other injuries shall include permanent injuries causing loss of earning power," is not subject to the construction made of it by plaintiffs in error. They would have it read, "such other injuries shall be permanent injuries causing a loss of earning power." The statute does not so read, nor can the language used in it be construed to so mean. The statute uses the word "include." Webster has defined this word to mean:

"To comprise, comprehend, or embrace; as a component part, item or member; as this volume includes all his works; his bill includes his last purchase; to enclose within, contain, confine; as an oyster shell sometimes includes a pearl."

It is apparent that the word "include" indicates that the "other" "permanent injuries" referred to in the statute comprehends other injuries than those causing a loss of earning power as well as those that do. To give proper effect to the clause of the statute in controversy it must be construed to mean that "such other injuries," etc. are all other permanent injuries whether or not there has been a loss of earning power. The cases of Paradise Coal Co. v. Industrial Com., 301 Ill. 504, and Epstein v. Hancock-Epstein Co., 101 Nebr. 442, cited by plaintiffs in error are not in point for the reason they are based upon statutes dissimilar to ours.

As before stated the theory of our statute is to allow compensation based upon the loss of a member or a part of a member or a function and not based upon any diminution of earning power by reason of the loss of function. If there has been such a loss as the statute contemplates it makes no difference whether there has been in consequence a diminution of earning power. Compensation is allowed for the loss of a member or a part of a member or a function for so many weeks, arbitrarily fixed by the statute, regardless of the loss of earning power of the employee. This is made quite apparent when we find, upon an examination of the statute, that no provision is made for the compensation based on the loss of earning power. According to the theory of plaintiffs in error the loss of one-fifth of the earning power of the employee would be compensated on the same basis as the loss of four-fifths of such earning power, as there is no schedule in the statute for compensation based on the loss of earning power.

The judgment is reversed and the cause remanded with directions to the lower court to enter judgment in favor of plaintiffs in error, as defendant in error has already been paid a greater sum than compensation at $20 per week for eight and two-thirds weeks.

It appears that in the agreement had between the parties prior to the time the matter came to the attention of the Compensation Commission that it was stated that Lynch lost one-half of the distal phalanx of his finger. The reason that a larger sum than that to which he was actually entitled was voluntarily paid Lynch by the company and the insurer was on account of the fact that the parties were under the mistaken belief that he had lost one-half of the phalanx, instead of one-third thereof, which would fix his right of recovery for thirteen weeks or $260. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.