230 S.W.2d 880 (1950)
COLLINS
v.
REED-HARLIN GROCERY CO. et al.
No. 6914.
Springfield Court of Appeals. Missouri.
April 18, 1950.
*881 Will H. D. Green, West Plains, H. D. Green, West Plains, for appellant.
John E. Linster, St. Louis, for respondent.
McDOWELL, Judge.
This is a proceeding under the Workmen's Compensation Law. Mo.R.S.A. § 3689 et seq. The appeal is from a judgment of the Circuit Court of Howell County, affirming award of the Industrial Commission.
Plaintiff's claim for compensation grew out of an accident of October 21st, 1947, caused by the explosion of a can of lye. Reed-Harlin Grocery Co., Inc., of West Plains, Missouri, was the employer and Employers Mutual Insurance Company of Wisconsin was the insurer.
Plaintiff complained of injuries from burns on the head, neck, arms and body, resulting in permanent loss of hearing in right ear, injured nerves and tissues and permanent disfigurement. He claims to have suffered 75% total permanent functional loss, and $1,000.00 additional compensation for disfigurement, expenses for three trips to St. Louis for examination of $125.00, and a reasonable allowance for nurse hire for 90 days at $5.00 per day.
The cause was heard before a referee of the Division of Workmen's Compensation, December 28th, 1948, who found that claimant's injury occurred October 21st, 1947, while in course of his employment with Reed-Harlin Grocery Company; that plaintiff sustained injuries resulting in disability, the exact nature and extent which cannot now be determined.
The referee found the average wage was in excess of $30.00 a week and that disability began October 22nd, 1947, and ended August 25th, 1948. He allowed $500.00 for disfigurement and expenses for 6 trips to St. Louis, for treatment, in the sum of $135.00 and ordered insurer to pay same. The referee allowed $210.00 for wife's services for nursing claimant for 30 days and ordered insurer to pay it. He ordered a credit of $500.00 for compensation paid by employer and insurer.
Upon application for review by both parties, the full Commission made a temporary or partial award and findings of fact and rulings of law on the 21st day of March, 1949, affirming the findings of the commissioner and allowing temporary total *882 disability from October 21st, 1947, to, and including, August 25th, 1948, the date temporary total disability ended, and $500.00 for facial disfigurement, $135.00 for traveling expenses. This temporary or partial order was made subject to further order of the Commission and the case was kept open for final award.
To this temporary and partial award of the Commission, claimant filed exceptions.
Upon a rehearing of said cause to make final award, September 16th, 1949, the full Commission made the following final award (omitting caption):
"We find from all the evidence that Dutch Collins, employee herein, has been fully compensated for any and all disability and medical expenses resulting from an accident of October 21, 1947, arising out of and in the course of his employment with the Reed-Harlin Grocery Company.
"Therefore, additional compensation must be and the same is hereby denied.
"The temporary or partial award of the Industrial Commission of Missouri, dated March 21, 1949, is hereby superseded by this final award."
Claimant moved the court for additional findings of fact and rulings of law relative to claimed injuries, which motion was, by the Commission, denied on the 28th day of September, 1949.
Claimant appealed said cause to the Circuit Court of Howell County, Missouri, where the same was by said court affirmed.
The facts necessary for determination of the issues in the case are as follows: It is admitted that on October 21st, 1947, Reed-Harlin Grocery Company was a major employer, operating under the provision of Missouri Workmen's Compensation Law, and was fully insured by the Employers Mutual Liability Insurance Company.
It is admitted that Dutch Collins, while employed by the Reed-Harlin Grocery Company, sustained injuries in an accident arising in the course of his employment. It is admitted that the average weekly wage was in excess of $30.00.
Claimant testified that he was 42 years old and married. On October 21st, 1947, while cleaning up the warehouse and hauling junk off to the yard for the Reed-Harlin Grocery Company, a can of lye burst and struck him in the side of the head. The whole shock hit his right ear and burned down into his head; that he received burns on his ear, neck and chin and has scars on the right side of his face. Plaintiff's testimony is that his shoulder and arms and chest were burned; that he was taken to Dr. R. E. Hogan for treatment. He bandaged his shoulder, neck, head and both arms; that he was confined to his bed for two or three weeks, except when he had to go to the hospital for dressings. Plaintiff testified that the bandages remained on him until he went to the hospital in St. Louis, in February, 1948.
Plaintiff's wife testified that the bandages remained on his arms about two months, during which time plaintiff's wife nursed him and had to feed him; that she dressed his arms and head during the time his arms were bandaged and after he was operated on.
Plaintiff testified that Dr. Byars operated on him for an infected ear; that his ear was grown up and that the doctor grafted skin from plaintiff's leg and put on top of his ear, January 8, 1948.
Plaintiff testified that the injury still causes him pain and that every time the air or wind strikes his ear it causes a roaring sensation and gives him the headache and makes him sick at his stomach; that he has been unable to do any work to any extent. He said he made two trips to Spring-field to drive home two cars and did some clearing on his land for a few minutes at a time and bought a few cattle, but that his injuries prevented him from doing any kind of work without causing dizziness and headaches. We state his testimony: "I kind of turn blind and get dizzy." He stated that when he gets warm there is a burning in his head.
Relative to expenses for trips made to St. Louis for treatment, plaintiff stated that he made seven trips; that his round trip bus fare was $10.54 a trip; that on each trip he had to stay two nights; that his hotel bill cost him from $4.00 to $6.00 *883 a day and that he took about eight meals each trip. Plaintiff said it cost him about $25.00 or $30.00 a trip.
Plaintiff testified that he and the drug store estimated the amount of medicine he purchased at $50.00; that he kept no record of the amount of his expenses.
Dr. Callahan testified that he treated claimant twice: first, on the 23rd day of July and more completely on the 28th day of August. His diagnosis was a perforated ear drum and chronic otitis media, multiple scars over the face, right ear and shoulders from burns, total deafness of right ear and deformity of the right ear lobe and right auditory canal. He testified the lower half of the ear drum was destroyed. He stated that because of the proximity of the semicircular canal which has to do with equilibrium, frequently, patients will develop head noises and dizziness. He testified the function of the middle ear had 100% disability with recurring infections of 50%; that claimant was permanently injured and would not be able to work at heavy labor; that he had chronic draining ears and would be sick at his stomach and have headaches; that the nervous system would not have complete functions during the flare-up of infections; that the total loss of hearing of the ear would cause 20% disability.
Dr. E. Claude Bohrer testified that he examined claimant August 23rd, of this year; that there was a history of burns on his right face, ear, wrist and shoulders. The examination showed results of plastic operation around the ear with deep scars on the right side of the neck, shoulder and wrist, well healed. The right ear was distorted some from the burns, the canal was somewhat contracted, about one-third to one-half of the right ear drum gone, the perforation of the right drum exposing the middle ear, and some granulations in the lower half of the middle ear, that is all a sign of chronic infection. There was no active pus drainage apparent at the time. The hearing of this ear is probably destroyed. Diagnosischronic inflammation of the right middle ear.
The doctor testified that the perforation of the ear drum would make his ear more sensitive to cold and alternation of the nerves would give some headaches. The doctor stated that the claimant should be able to do an amount of average work in time, from some six to twelve months. He said he did not believe the inner ear was affected. He testified he thought claimant was able to do light work at this time. He stated he thought claimant was totally disabled in the right ear but not physically; that claimant had complete function of the arms, back and legs and there is no damage to the brain. This question was asked the doctor:
"Q. Would you want to give any amount of disability he has? A. That would be totally to the ear. I think his physical disability will clear up and I don't think or feel like I could say an exact estimate of that. I don't feel it has reached the point where I could say the final rate would be. He will have 50% loss of hearing of the ears."
Dr. C. A. Presnell testified that he examined claimant September 10th, 1948, and found he had infected tonsils; that the nasal septum was deflected to the right side and there was no evidence of any infection within the nose. The left ear drum was normal. The right ear, there was a deformity of the auricle and some scars about the neck and shoulder and the ear. He had a large anterior and central perforation in the right ear drum and there was a slight amount of discharge present there. He testified he made tests to find the amount of injury to the hearing. One test showed no hearing in one ear but the second test he guessed there was some hearing and that he believed it was about 50%, a mere guess. This testimony was given:
"Q. No, I mean was there any disability other than the loss of hearing that you could find doctor? A. None.
"Q. Was there any evidence of any injury to the brain? A. None that I could find.
"Q. Or central nervous system or anything like that? A. None that I could observe. * * *
"Q. Your estimate of permanent disability would be based entirely on the loss *884 of hearing in the ear and the scarring? A. That's right. I wouldn't judge him 50% totally disabled, certainly. I guess his hearing loss to be of 50%.
"Q. In the ear? A. His right ear, yes.'"
The doctor testified that he did not see why claimant would not be able to do heavy work. He stated thousands of people are working every day with running ears.
Dr. Louis T. Byars, a specialist in plastic surgery, testified that he first saw claimant December 22nd, 1947. The right ear was crumpled and partially destroyed. Apparently, there had been considerable inflammation in the external ear. The ear canal was completely obliterated. The doctor testified he operated on claimant on January 8th, 1948, and removed the scar which obliterated the ear canal so the canal was open; that a small skin graft from the thigh to cover a portion of the raw area on the ear was used; that claimant stayed in the hospital ten days; that he sent him back to Dr. Hogan to dress the area every other day and pack the ear canal firmly with cotton to keep it dilated. The doctor stated he saw claimant February 1st, 1948; that the ear canal had healed and the hole in the ear was closed. The doctor said he saw claimant next on July 8th, 1948. At that time he stated Dr. Hogan had placed him on a diet and that his abdominal symptoms were much better; that his general appearance was good; that his ear was considerably better in shape and the ear canal was wide open. The doctor stated that he was totally deaf in the ear and complained of headaches and some pain and roaring in the ear. The following testimony was given:
"Q. What did your examination on that day reveal, doctor, in the way of physical evidence of disability? A. I examined him in regard to the scars in the ear. I did no detail examination in any other way. The ear canal was no longer closed, the scars were becoming softer and less inflamed in appearance. His general appearance was improved, looked as though he had gained weight and was not particularly sick.
"Q. Did he give the appearance of being in good health? A. Yes.
"Q. Was there any drainage from his ear at that time that you could see? A.No."
The doctor testified that he presumed there would be a total loss of hearing of the right ear and that claimant would have a certain amount of head noise and discomfort on that side; that there was a certain amount of scars which would be permanent but these scars would in no way interfere with the function of the muscles in the various parts of the body; that they were superficial involving the skin only.
On rehearing of this cause, Dr. Bohrer testified, May 4th, 1949, that claimant's right ear was filled with pus; that he observed a large perforation of the ear drum and redness of the drum and wall of the middle ear; that he gave patient penicillin shots for three days for said infection. He testified there was a complete loss of hearing in the right ear and a slight loss of hearing in the left ear, which was probably the result of colds and age and things of that type. He testified that he did not think the inner ear was involved, which is the organ of balance and equilibrium. He testified that the function of the middle ear is primarily to keep the air behind the drum; that there are three little bones, malleus, incus and stapes, and that these carry sound to the inner ear for interpretation by the nerves. This testimony was given by the doctor:
"Q. Then, would I be correct by stating that, in your opinion, his permanent disability is confined to the loss of hearing? A. Yes, so far there seems to be no disturbance of the other phases of the ear, the functions of balance or equilibrium, that is in the inner ear."
The doctor testified that he found no connection between the accident and the hearing in the left ear.
In this hearing, Dutch Collins, claimant, testified that he waived further treatment by the employer; that he would like to get the matter settled.
Dr. E. H. Rainwater, of Springfield, Missouri, examined claimant October 9th, *885 1948, and found him suffering a slight drainage and perforated ear drum, which might cause headaches and gave as his opinion that claimant suffered an 80% to 90% loss of hearing in the right ear.
Leland Rothgeb, Vice-President of Reed-Harlin Grocery Company, testified that claimant returned to work but because of his injuries, was unable to do the work assigned to him. He testified that claimant had drainage on his right ear, as did Harold Dowler, another employee of said company, who also testified claimant constantly complained of headaches and dizziness and the same testimony was given by Clifford Harris, an employee of Reed-Harlin Grocery Company.
The testimony shows that the employer paid claimant five cents an hour more on his return to work than he had been paying him prior to the injury.
Appellant was plaintiff below and, in this opinion, we will refer to him as plaintiff, and the Employers Mutual Liability Insurance Company et al., who were defendants below, we will refer to as defendants.
Under points and authorities, plaintiff states, under No. I, that the findings and award of the Industrial Commission in this case, as affirmed by the Circuit Court of Howell County, Missouri, should be set aside for the reason that such findings and award are not authorized by law and were not supported by competent and substantial evidence.
Under this assignment of error plaintiff states that the Appellate Court has the right to set aside the findings and award of the Industrial Commission of Missouri if the findings and award of the Commission were not authorized by law or if the findings and award were not supported by competent and substantial evidence. He cites under this heading Sec. 22, Art. V, 1945 Constitution, Mo.R.S.A.
Section 22 of the Constitution of Missouri is as follows: "All final decisions, findings, rules and orders of any administrative officer or body existing under the Constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record."
We hold that there is no question but what the action of the Industrial Commission in this case is covered by this section of the Missouri Constitution.
In Williams v. International Shoe Co., Mo.App., 213 S.W.2d 657, 662, the law is stated thus: "The enlarged scope of review which the new Constitution affords in the case of the decisions of administrative tribunals does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal, though it does authorize it to decide whether an administrative tribunal could have reasonably made its findings and reached its result upon a consideration of all the evidence before it. If a particular decision is clearly contrary to the overwhelming weight of the evidence, the reviewing court may set the same aside, but in determining where the weight of the evidence lies, it must adhere to the rule of due deference to findings involving the credibility of witnesses, which have been made by those before whom the witnesses gave oral testimony. Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55; * * *."
The court cites a number of other authorities which are in point under this declaration of law and this statement is a clear declaration of the law as it now exists in Missouri. Under the old law, the findings of the Commission had the same binding effect upon this court as the verdict of a jury, but this rule has been changed by the new Constitution as above set out.
In Evans v. Farmers Mutual Hail Ins. Co., Mo.App., 217 S.W.2d 705, 709, the court states the law: " * * * The pattern is this: That while a review shall include an inquiry whether the decision of the commission is supported by competent *886 and substantial evidence upon the whole record, yet `this does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence.'"
Under Point II, plaintiff complains that the Industrial Commission, after final award, erred in refusing and denying the request of claimant for a statement of fact, rulings of law and other matters pertaining to the question at issue.
In Waring v. Metropolitan Life Ins. Co., 225 Mo.App. 600, 609, 39 S.W.2d 418, 423, the court made the following statement of law: "Section 3339 [Mo.R.S.A. § 3729], quoted above, contemplates that the commission shall make findings of fact and rulings of law. This injunction has almost invariably been overlooked in the awards written by the commission in cases reaching the appellate courts. This plain duty should be performed, and the commission should carefully distinguish and make clear in its award the findings of fact and the rulings of law. But, if the findings of fact be absent, and merely a conclusion involving a question of law be stated, the appellate court will look to the record to determine for itself whether there is sufficient competent evidence to support the conclusion and to warrant the making of the award. Metting v. Lehr Construction Co., [225 Mo.App. 1152], 32 S.W.2d 121."
In Smith v. General Motors Corporation, Mo.Sup., 189 S.W.2d 259, cited by plaintiff, loc. cit. 263, the court states the law thus: "The award of the Commission (absent fraud) is conclusive on appeal if supported by substantial evidence. Section 3732, R.S.1939, Mo.R.S.A. § 3732."
And, 189 S.W.2d on page 264 of said opinion, the court states the law: "The legislature has contemplated that the Workmen's Compensation Commission in making an award shall make a statement of the findings of the fact, rulings of law, and any other matters pertaining to the question at issue. Sections 3729 and 3732, R.S.1939, Mo.R.S.A. §§ 3729 and 3732. It has been noticed that this duty of the Commission had been overlooked in the making of some of the awards in those cases which have reached the appellate courts. Waring v. Metropolitan Life Ins. Co., 225 Mo.App. 600, at page 609, 39 S.W.2d 418, at page 423. This court has said: `Undoubtedly, if any party feels that the commission's findings of fact are not clear, leave the reason for its conclusion and award in doubt, or should be amplified for any other reason, he should ask the commission to modify them by making additional findings instead of complaining in the appellate court that findings of fact, which are not inconsistent with the result reached, do not contain a finding concerning all disputed questions of fact which must necessarily have been decided in order to make and support the award.' * * *"
The court held in this case that the Commission should make a statement of facts in making the award in order that the Commission making an award upon one theory, though erroneous, may not be upheld in the appellate court upon some other theory.
In State ex rel. Probst v. Haid, 333 Mo. 390, 398, 62 S.W.2d 869, 873, the court states: " * * * We think that a finding of at least the ultimate constitutive facts (as distinguished from evidentiary facts) about which there is conflicting evidence, is contemplated by section 3339, R.S.1929 [Mo.R.S.A. § 3729], * * *."
This case also holds that a general finding of the Workmen's Compensation Commission necessarily implies a finding of every fact necessary to support general finding.
On the 28th day of December, 1948, the referee of the Commission made a temporary or partial award, allowing claimant $20.00 per week from October 22nd, 1947, to, and including August 25th, 1948, the date when temporary total disability ended. $500.00 for facial disfigurement for scars, etc., $210.00 for nursing by claimant's wife and $135.00 expenses to St. Louis for treatment, and the award allowed defendants credit $500.00 which admittedly had *887 been paid by the employer. At the time of this award the referee made the following findings of fact and rulings of law, briefly stated as follows: Employee sustained injuries in accident October 21st, 1947, while employed by Reed-Harlin Grocery Company; that his average weekly wage was in excess of $30.00 per week; that disability began October 22nd, 1947, and ended August 25th, 1948; that employee was entitled to $500.00 for facial disfigurement, leaving scars about right ear, face and neck; that employee was entitled to $135.00 for six trips made to St. Louis, Missouri, for treatment, at request of employer and that employee was entitled to thirty days nursing charges rendered by his wife in the sum of $210.00.
Upon application for review before the full Commission, March 21st, 1949, the temporary award made by the Commissioner was affirmed with the exception that the Commission allowed the disability from October 21st, 1947, and disallowed the $210.00 allowed for nursing. The Commission, however, made findings of fact and rulings of law almost exactly as was made by the referee in the first hearing. Exceptions to this temporary award by the Commission were filed by claimant so as to be considered on final award. On Monday, June 6th, 1949, a hearing was had on the final award, before Referee Leonard F. Newton, in behalf of the Industrial Commission, and final award was made by the Commission on the 16th day of September, 1949. Omitting the caption the award is as follows:
"The above styled case now pending before the Industrial Commission of Missouri on a temporary award, is submitted to the Commission upon a rehearing of said case to make said award final. After fully considering the evidence, exhibits and pleadings, the Commission finds in favor of the employer and insurer and against the employee and awards no additional compensation for said accident.
"We find from all the evidence that Dutch Collins, employee herein, has been fully compensated for any and all disability and medical expenses resulting from an accident of October 21, 1947, arising out of and in the course of his employment with the Reed-Harlin Grocery Company.
"Therefore, additional compensation must be and the same is hereby denied.
"The temporary or partial award of the Industrial Commission of Missouri, dated March 21, 1949, is hereby superseded by this Final Award."
To this final award, plaintiff filed a motion requesting additional findings of fact and of law. In this request he sets out eighteen separate issues upon which he requests such findings. These relate principally to the question of compensation for nursing by plaintiff's wife, to expenses for medicine paid by plaintiff, to the issue of injury to plaintiff's right ear and, especially to the function of the right middle ear, and the function of the skin. This motion, made by plaintiff, was, by the Commission, denied.
We hold that the Commission adopted the findings of fact as shown in its affirming the trial commissioner in the temporary award and we follow the rule announced in Waring v. Metropolitan Life Insurance Company, supra, stated as follows: "This plain duty should be performed, and the commission should carefully distinguish and make clear in its award the findings of fact and the rulings of law. But, if the findings of fact be absent, and merely a conclusion involving a question of law be stated, the appellate court will look to the record to determine for itself whether there is sufficient competent evidence to support the conclusion and to warrant the making of the award."
Under the new Constitution, the appellate courts are no longer bound by the findings of fact and the conclusions of law made by the Commission but we are empowered to examine the record to determine for ourselves whether or not there is substantial evidence to support the findings of the Commission and whether or not the Commission has followed the law. We, therefore, find against plaintiff in this assignment of error. We agree with the law as declared in the cases cited by plaintiff but we hold that our ruling herein is in accord with such law.
*888 Plaintiff contends, under Point III, that the Commission erred in failing to award any compensation to claimant for loss of hearing in his right ear and, under this allegation of error, he states: "Claimant, under the facts in this case, was entitled to an award based on a percentage of 168 weeks. He suffered a complete loss of hearing in one ear and there was a slight loss of hearing in the other ear."
Under this heading plaintiff cites Sec. 3705, R.S.Mo.1939, as amended by the Laws of Missouri 1947, Mo.R.S.A. § 3705.
Under the Laws of Missouri 1947, page 441, Vol. II, Mo.R.S.A. § 3705, the Statute provides compensation: "Complete deafness of one ear, the other being normal ..... 44 weeks."
The record shows that the temporary or partial award made by the Commission on the 21st day of March, 1949, allows plaintiff disability in the sum of $20.00 per week, from October 21st, 1947, to and including, August 25th, 1948, and we find that that is 44 weeks. And we find from the evidence that there was substantial testimony that the only disability suffered by the plaintiff in this case was the total loss of his hearing in the right ear. This same Section of our Statute provides that where there are scars and disfigurement about the face and head the Commission may allow an additional sum of not to exceed $1,000.00 and, here, the Commission allowed a sum of $500.00. This award was affirmed by the Commission in its final award.
Dr. Bohrer, in the second hearing of May 4th, 1949, testified that, in his opinion, plaintiff's permanent disability was confined to the loss of hearing in the right ear and he specifically testified that there was no connection between the accident and the hearing in the left ear.
Dr. E. H. Rainwater testified that plaintiff suffered a loss of hearing in the right ear from 80% to 90%.
There is definite testimony in the record that there was a slight loss of hearing in the left ear but that such loss of hearing was due to age or a cold and had no connection with the accident.
Plaintiff's employer testified that plaintiff was unable to do the work assigned to him on his return to his former work and he stated that the reason was that he was having drainage from his right ear and dizziness and headaches caused by the injury to such ear. But plaintiff, himself, declined further treatment, to which he was undoubtedly entitled. The evidence shows that when asked by the referee if he desired further treatment, he answered "no."
Dr. C. A. Presnell testified that when he examined claimant on September 10th, 1948, he found the left ear drum was normal and that, upon making tests for the loss of hearing in the right ear, he believed there was a 50% loss of hearing in the right ear. He testified there was no other disability. This doctor testified that he did not see why claimant would not be able to do heavy work. He stated that thousands of people are working every day with running ears.
Dr. Louis T. Byars testified that plaintiff's injuries were to his right ear and that he was totally deaf in that ear. This doctor did plastic surgery on plaintiff's ear and stated that, on the last examination, plaintiff's appearance was improved, that he thought he had gained weight and was in good health. He testified that there would be a total loss of hearing in the right ear. He also testified that there was a certain amount of scars which would be permanent but would, in no way, interfere with the functions of the muscles and various parts of the body; that they were superficial, involving the skin only.
We hold that there is substantial evidence in this case to support the findings of the Commission that the only permanent injury sustained by plaintiff in this case was the loss of hearing in his right ear and that the injuries sustained by plaintiff in this accident were in no way connected with whatever loss of hearing plaintiff might have in his left ear.
Quoting again from the Statute, Section 3705, Laws of Missouri, 1947, Vol. II, pages 440 and 441: "(a) For permanent partial disability, in lieu of all other compensation, except that provided under Section 3701 of *889 this chapter, * * *. Complete deafness of one ear, the other being normal ..... 44 weeks."
Section 3701, R.S.Mo.1939, Mo.R.S.A., referred to in section above, provides for medical, surgical and hospital treatment. We cannot conceive how the plaintiff can contend that the commission did not follow the law in making its award of compensation in this case under the statute just quoted.
We hold that our finding under assignment III covers plaintiff's assignment of error under IV, which complains that the Commission erred in not making an award for compensation for permanent loss of function of his right middle ear.
The injury sustained in the case at bar is included within the specific schedule provided in the law. And, as a matter of course, compensation is based upon a loss of the hearing in the right ear or a function of the right ear and is not based upon any diminution of earning power by reason of the loss of function. This law is declared in Sleets v. St. Louis Material & Supply Co., Mo.App., 39 S.W.2d 821, and in Lynch v. Gleaner Combine Harvester Corp., 223 Mo.App. 196, 17 S.W.2d 554, and in all of the other cases cited under this contention of error by plaintiff in his brief.
Assignment of error No. V, by plaintiff, in his brief, complains that the Commission erred in failing to make award to claimant for nursing services performed by his wife.
The Commission in this case denied compensation for nursing services rendered by plaintiff's wife. Where there is no finding by the Commission on an issue, it is assumed that the Commission determined the cause adversely to claimant. Waring v. Metropolitan Life Insurance Company, supra.
Section 3701, R.S.Mo.1939, Mo.R.S.A., provides: "(a) In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, and hospital treatment, including nursing, ambulance and medicines, as may reasonably be required for the first ninety days after the injury or disability, * * * not exceeding in amount of sum of seven hundred and fifty dollars, and thereafter such additional similar treatment as the commission by special order may determine to be necessary. If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense."
The law provides that the fees and charges for nursing provided for in the Statute shall be fair and reasonable.
The question presented to this court is one of fact as to whether or not the services of nursing, rendered by the wife, were reasonably required during the first ninety days after the injury.
The testimony of the plaintiff is that, after the accident, he was taken to the Hogan Hospital and treated by Dr. R. E. Hogan; that the doctor, after the treatments, bandaged up these burns. This testimony was given:
"Q. What parts of your body were bandaged? A. On my shoulder, neck, head, both arms were bandaged plumb up."
He testified that his lower arms, from the elbows down, were bandaged; that it was necessary to bandage his left hand near the thumb and the inner wrist. His testimony was:
"Q. And how long were you confined to your bed then? A. Oh, for aboutI couldn't get out for about two or three weeksI would have to get out and go to the hospital for dressings.
"Q. How long were you kept in bandages? A. Until February, the last time they operated on me in St. Louis."
He testified that he imagined the bandages were kept on his arms for a couple of months; that his wife nursed him and had to feed him until he got the bandages off his arms, which was about two months time. And that after that she dressed his arms until he was sent to the doctor in St. Louis.
It is the duty of this court, in its review, to include in its inquiry whether the decision of the Commission denying recovery for medical services rendered by the wife is supported by competent and substantial evidence from the whole record. This does not mean that the court will substitute its *890 own judgment on the evidence for the judgment of the administrative tribunal, but, we will decide whether such tribunal could have reasonably made its findings and reached its result upon a consideration of all the evidence before it, and to set aside the decision of the Commission if it is clearly contrary to the whole weight of the evidence. Evans v. Farmers Mutual Hail Insurance Company, supra.
The testimony on the part of plaintiff is that his wife had to feed him, bathe him and dress him for the first two months; that she dressed his wounds and gave him medicine.
In the temporary or partial award, made by the referee on the 28th day of December, 1948, the referee allowed claimant 30 days nursing, by his wife, in the sum of $210.00, and found that such nursing was necessary.
In Daugherty v. City of Monett, 238 Mo.App. 924, 192 S.W.2d 51, at page 56, this court, following the old rule that the findings of fact by the Commission had the force and effect of a verdict of a jury, sustained the Commission in allowing compensation for nursing, rendered by employee's wife, who was not a graduate nurse. We quote from that opinion: "Appellants contend that the Commission was in error in making an allowance for nursing by respondent's wife. They assert that nursing is a duty she owed her husband by virtue of the marital relation and for which she could not collect from him and which, for that reason, could not be included in the award against appellants. * * * Our statute (Sec. 3701, R.S.Mo.1939, Mo.R.S.A.) requires the employer to furnish `such medical, surgical, and hospital treatment, including nursing,' as may be reasonably required for the first 90 days, and `such additional similar treatment as the commission by special order may determine to be necessary." It also provides that such fees and charges shall be fair and reasonable and subject to regulation by the Commission, * * *."
The court states in this opinion that there is no dispute that the wife rendered the services, in addition to her ordinary household duties. The law does not require that the nursing be by a trained nurse but merely holds the employer liable for nursing. This case also holds that the Workmen's Compensation Law must be given a liberal construction in favor of the employee and that under such construction the employer should pay for competent nursing, even though rendered by the wife of the respondent and held defendant liable.
The testimony is undisputed in this case that plaintiff was in need of nursing services. There is no dispute that the wife rendered such services, even though she was not a trained nurse. The referee, in his findings of fact, found such services to be necessary, for a period of 30 days. Under the testimony in the case such services were reasonably worth from $6.00 to $8.00 per day. The Commissioner allowed $210.00.
We believe that under the authority cited that the employer knew of the injuries from the accident; that he was aware that nursing services were necessary for the proper care and treatment of this claimant and that when it failed to provide such services or failed to offer to provide such services it became liable for such necessary nursing. And we find that the decision of the Commission is not supported by competent and substantial evidence upon the whole record. We find that the Commission did not and could not reasonably find that claimant was not entitled to compensation for nursing services rendered by his wife upon a consideration of all the evidence before it; and we find that the decision of the Commission disallowing compensation for nursing services is clearly contrary to the overwhelming weight of the evidence.
Error No. VI, on the part of plaintiff, is that the Commission erred in refusing to allow compensation for sum expended by claimant for medicine. Again, under this heading, we state that the question of expenses for medicine is one of fact. The Commission's decision should not be disturbed unless its findings are against the overwhelming weight of the evidence. The evidence in this case relative to the question of medical expenses is that claimant purchased medicine and bandages at the drug store and kept no record of the amount he spent; that he and the druggist made an *891 estimate of the cost of such expenses and that was $50.00. We think the Commission was justified in saying that the testimony was not sufficient to support this contention.
Contention VII is that the Commission erred in failing to award claimant full compensation for his expenses to St. Louis for treatments made at the instance and request of insurer. We find against claimant on this contention.
Plaintiff, himself, testified that he made six trips. He testified as to the cost of his bus fare and as to the number of nights he would have to stay in St. Louis for treatments but he was not definite as to the actual expenses incurred, neither did he keep any record of such expenses. Since this was a question of fact for the Commission to decide, we affirm its holding.
Assignment of error, under No. VIII on the part of plaintiff, we have passed on in this opinion and we find against plaintiff.
Plaintiff's assignment of error No. IX, that the Commission failed to make award to claimant for loss of function of skin on shoulder, chest and arms is without merit.
Under assignment of error No. X, in plaintiff's brief, the law is correctly stated that the Workmen's Compensation Law shall be liberally construed in favor of employee.
Under assignment of error No. XI, in plaintiff's brief, we agree with the plaintiff. The law is as stated that the Compensation Commission is the judge of the credibility of witnesses, but the Commission is not authorized arbitrarily to disregard competent, substantial and undisputed testimony of witnesses who are not shown by the record to have been impeached and to base their findings upon conjecture or their own mere opinion unsupported by sufficient competent evidence.
The cause is reversed and remanded for further proceedings in accordance with this opinion.
VANDEVENTER, P. J., and BLAIR, J., concur.