**ST. LOUIS COUNTY, Missouri, a Body Corporate and Politic, Appellant,**

**v.**

**STATE HIGHWAY COMMISSION of Missouri, Respondent.**

No. 51729.

Supreme Court of Missouri, Division No. 2.

Dec. 12, 1966.

Donald J. Stohr, St. Louis County Counselor, Thomas W. Wehrle, Associate County Counselor, for appellant.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for respondent.

STORCKMAN, Judge.

This is an action for a declaratory judgment to determine if funds derived from certain general obligation bonds can be lawfully used by the plaintiff St. Louis County to reimburse the defendant State Highway Commission of Missouri for the cost of acquiring right of way for a highway in St. Louis County designated State Route AC in accordance with a contract between the County and the Highway Commission. The trial court held that the funds in question could not be so used and the County appealed. The facts are all agreed either by stipulation or admissions in the pleadings.

A proposal to issue general obligation bonds consisting of eight propositions aggregating $39,712,000 for public improvements was submitted to the voters of St. Louis County and approved on November 22, 1955. The item we are called on to construe is Proposition No. 1, which, as submitted to the voters and approved, reads as follows:

"Shall the following be adopted:

"Proposition to issue the bonds of St. Louis County, Missouri, in the amount of Eight Million, Five Hundred Thousand Dollars ($8,500,000) to provide funds for the purpose of paying any cost, judgment, and expense for property, or rights in property, acquired by purchase or eminent domain, for the construction of highways within said County; said highways to include those commonly known as the Mark Twain and Daniel Boone Expressways and Ozark Expressway with Route 61 connection, and an outer belt expressway running generally north and south and connecting with highways and expressways running generally east and west in said County."

The proceeds from the issuance of the general obligation bonds under Proposition No. 1 were credited to a special fund designated as the "Expressway Fund" and have been or will be expended in defraying the cost of St. Louis County highways as follows: Daniel Boone Expressway, $2,422,-281.59; Mark Twain Expressway, $2,247,-992.23; Ozark Expressway with Route 61 connection, $158,073.18; and the estimated cost in connection with Interstate Express-

way 44, $1,100,000. This leaves in the special fund derived from Proposition No. 1 bonds a sum in excess of $2,500,000.

Since the approval of Proposition No. 1 by the voters of St. Louis County, the Highway Commission has constructed, or is in the process of constructing without cost to the County as part of the Interstate Highway System a limited access highway in St. Louis County, commonly called the Circumferential Expressway, and officially designated as Interstate Highway 270, Interstate Highway 244, and Interstate Highway 255. The route of the Circumferential Expressway is for all intent and purposes practically the same as the route contemplated by the "outer belt expressway running generally north and south" specified in Proposition No. 1. It would not be feasible or practical to expend monies from the Expressway Fund for the construction of the outer belt expressway referred to in Proposition No. 1 because the Circumferential Expressway follows basically the same route and will serve the purpose for which the outer belt expressway was to be constructed.

On September 9, 1953, the St. Louis County Council entered an order authorizing the County to execute a "Temporary Maintenance Agreement and Supplementary Agreement" which would permit the Highway Commission to assume certain maintenance and acquisition responsibilities over Halls Ferry Road, a public highway in the County, from the northern limits of the City of Jennings to Shackleford Road, a distance of 8.7 miles. This section of the highway designated State Route AC would become a part of the Supplementary State Highway System when constructed by the Highway Commission, and St. Louis County agreed to secure or cause to be secured the necessary right of way free of cost to the Highway Commission. On October 4, 1960, pursuant to an ordinance duly enacted by the St. Louis County Council, a contract was entered into by and between the County and the Highway Commission under

which the Highway Commission proposed to construct and improve State Route AC, described above, and St. Louis County agreed to pay the costs of the acquisition of the necessary right of way for this reconstruction and improvement.

For the purpose of effectuating this prior ordinance and agreement, the St. Louis County Council on October 3, 1962, enacted an ordinance which appropriated the sum of $1,100,000 to pay the cost of acquiring the right of way for the reconstruction and widening of State Highway AC. The ordinance expressly provides that this appropriation was to be charged to the Expressway Fund created by the proceeds of the sale of bonds approved in Proposition No. 1 and was to be withdrawn from that Fund and used in connection with the improvement of State Route AC. The ordinance further provides that the Supervisor of St. Louis County is authorized to issue requisitions to reimburse the State Highway Commission when the Commission presents its statements of account.

Halls Ferry Road, now designated State Route AC, is one of the main traffic arteries running north and south in the northern part of St. Louis County and, except for a small portion of the highway at or near Interstate Highway 270, it is a narrow, two-lane heavily traveled, over-crowded road and is in dire need of widening and improving so as to relieve traffic congestion in the northern section of St. Louis County. The State Highway Commission has acquired substantial portions of the right of way for the reconstruction and improvement of State Route AC and in doing so has expended for such right of way the sum of $288,470.69, for which sum the State Highway Commission is claiming reimbursement from St. Louis County pursuant to the contract of the parties. It is estimated that additional sums of approximately $977,000 will be necessary to acquire the remainder of the right of way necessary for the improvement of the entire State Route AC. Pursuant to the agreement, St. Louis County is obligated to

reimburse the State Highway Commission for such additional sums as are necessary to obtain all of the right of way of State Route AC.

By the terms of the agreement and Ordinance No. 2684, 1962, referred to above, the Supervisor of St. Louis County is authorized and directed to use the amount appropriated from the Expressway Fund to pay the cost of acquiring the right of way for State Route AC. Section 227.170, RSMo 1959, V.A.M.S., furnishes express power and authority for St. Louis County "through its proper officers, to contribute out of funds available for road purposes all or a part of the funds necessary for the purchase of right of ways for state highways". The question presented is whether the acquisition of right of way for State Route AC is within the purpose and purview of the term "for the construction of highways within said County" as that term is used in Proposition No. 1.

In deciding against plaintiff's contention, the trial court relied strongly on exhibit 1A which is entitled a "Fact Book" which as stated therein was put together because the leaders "of the St. Louis County Citizens Bond Issue Campaign Committee wanted to assemble in one place all the facts, figures and reasons behind the $39,-712,000 bond issue program. They wanted speakers and active campaign workers to have a manual they could refer to for information regarding any part of the bond issue program. They wanted the details spelled out as they cannot be in the customary campaign leaflet." The Fact Book contains 113 pages and deals with all eight propositions, their origin, history and merits. The trial court referred to and quoted from the Fact Book at length. In proper circumstances such a pamphlet may be admissible to aid the court in understanding the history of a transaction and the subsequent actions of a legislative body. City of St. Louis v. Pope, 344 Mo. 479, 126 S.W.2d 1201, 1209 [3–5]. As indicated by the quotations from the manual, it was primarily for the information of "speakers and active campaign workers". Also, as stated, it was something more than "the customary campaign leaflet", but still it was campaign material designed to assist in the factual and favorable presentation of the propositions to the voters of St. Louis County. This is a laudable endeavor, but the fact remains that the statements made and the interpretation placed on the various proposals are those of the persons who prepared the manual. We find no culpable misstatements in the Fact Book; however, we need not discuss its contents or the trial court's comments thereon because it has been specifically held that statements and representations made before an election held to vote on a constitutional amendment authorizing a bond issue for highway purposes are neither conclusive nor persuasive evidence on the courts when called on to construe a particular proposition adopted. State ex rel. Russell v. State Highway Commission, 328 Mo. 942, 42 S.W.2d 196, 202 [6]. This principle would apply to any legislative enactment. We must keep in mind that this is not an action to invalidate the result of the election for fraud or misrepresentation (if that were possible) but to construe one of its enactments.

Webster's Third New International Dictionary defines an expressway as "a high-speed divided highway for through traffic with access partially or fully controlled and grade separations at important intersections with other roads". We have concluded that expressways so defined are within the meaning of the term "highways within said County" as that term is used in Proposition No. 1. The primary rule of construing statutes and ordinances is to ascertain and give effect to the legislative intention. In so doing, words of common use are construed in accordance with their natural and ordinary meaning.

The word highway is first used in Proposition No. 1 broadly and without limitation except that the highways must be within the County. The Proposition then

states that "said highways" are "to include" the expressways specifically designated therein. The meaning of the word "include" may vary according to its context. Ordinarily it is not a word of limitation, but rather of enlargement. 42 C.J.S. Include p. 525. When used in connection with a number of specified objects, it implies that there may be others which are not mentioned. Lynch v. Gleaner Combine Harvester Corporation, 223 Mo.App. 196, 17 S.W.2d 554, 556 [2]; Farish v. Cook, 6 Mo.App. 328, 331.

 It cannot be successfully contended that St. Louis County was bound to construct the outer belt expressway running generally north and south regardless of changed circumstances. It was the beneficiary of a windfall in that the State Highway Commission constructed a highway that had the same purpose and fulfilled that need of the County. A political subdivision is not bound as by a contract to construct a public improvement where the need for its doing so has ceased to exist. Thompson v. City of St. Louis, Mo., 253 S.W. 969.

A somewhat similar situation was involved in Petition of City of St. Louis, Mo., 363 S.W.2d 612. In 1944 the City of St. Louis was authorized to issue bonds for the purpose of constructing, repairing and improving sewers and drains and acquiring rights of way therefor. When the Metropolitan St. Louis Sewer District was formed in 1954, and the sewers of the City of St. Louis were taken over by the District, a substantial amount of the bonds had not been sold. Thereafter, the City and the Sewer District entered into a contract whereby it was agreed that the City would build a certain sewer under the direction of the District with the proceeds of the unsold bonds and that the District would then take over and maintain the sewer.

This court held that the fact that the sewers of the City of St. Louis had been taken over by the Sewer District did not preclude the City of St. Louis from entering into the contract of cooperation, or prevent the City from selling the remaining sewer bonds which had been authorized by an election held eighteen years previously and using the proceeds to construct the sewer which would be turned over to the Sewer District.

 We hold that the intention and purpose of Proposition No. 1 was to embrace and specify expressways as one of the kinds of highways for which the funds provided could be used; the inclusion and specific mention of certain expressway routes did not have the effect of limiting the term "highways within said County" or convert and dedicate the proceeds of the bonds sold solely to the construction of expressways. Designation of the proceeds as the "Expressway Funds" did not change their essential character. It follows that funds from the Expressway Fund can be lawfully appropriated in payment of the cost of acquiring the right of way for State Route AC.

The trial court held that the contracts entered into by the parties and the prior ordinances authorizing them were valid but found, declared, and decreed "that the portion of Ordinance No. 2684, 1962 of Section 1, charging the acquisition cost of Highway AC to the 'Expressway Fund', is invalid and of no force or effect." We hold that Ordinance No. 2684, 1962 is valid in its entirety.

To the extent indicated, the judgment is reversed and the cause is remanded with directions to enter a judgment not inconsistent with this opinion.

All of the Judges concur.